Bernard W. BELL and Sandra Bell, Plaintiffs,
Kenneth J. DUNLAP, Guardian ad Litem for
Minor Children, Stacey Lea Bell, Kimberly Ann
Bell and Barbara Lynn Bell, Plaintiffs-Appellants-
Petitioners,

v.

COUNTY OF MILWAUKEE, a municipal
corporation, Impleaded Plaintiff-Respondent,
COUNTY OF FOND DU LAC, a municipal
corporation, Mollie E. Lookatch, Personal
Representative of the Estate of Bernard R.
Lookatch, P.E., Deceased, District Chief
Maintenance Engineer, Transportation Distict No. 2.
of the State of Wisconsin, Wisconsin Power and
Light Company, Adela Benson, Douglas S.
Young and Florence Taylor Young, Defendants-
Respondents,

WISCONSIN POWER AND LIGHT COMPANY,
a domestic corporation, Third-Party Plaintiff-
Respondent,

Ronald E. HOLUP, Third-Party Defendant-
Respondent.

Supreme Court

*No. 84-2171. Argued September 30, 1986.—Decided November 25, 1986.*

(Also reported in 396 N.W.2d 328.)

25

For the plaintiffs-appellants-petitioners there were briefs by *George P. Kersten, Ann L. Muchin, Kenneth J. Dunlap* and *Dunlap & Cybulski*, Milwaukee, *Kersten & McKinnon*, Milwaukee, of counsel, and oral argument by *Ms. Muchin*.

For the defendants-respondents, County of Fond du Lac and Wisconsin Power and Light Company, there was a joint brief by *Daniel R. Riordan, Nancy J. Meissner* and *Riordan, Crivello, Carlson, Mentkowski & Henderson*, Milwaukee, and *James C. Herrick, Bruce A. Schultz, Paul W. Schwarzenbart* and *Brynelson, Herrick, Bucaida, Dorschel & Armstrong*, Madison, and oral argument by *Ms. Meissner* and *Mr. Schwarzenbart*.

DAY, J. This is a review of an order of the court of appeals, summarily affirming an order of the circuit court for Milwaukee County, Honorable Elliot N. Walstead, Circuit Judge, granting defendants' motions for summary judgment on Stacey Lea, Kimberly Ann and Barbara Lynn Bell's claim for loss of society and companionship arising from negligent injury to their father, Bernard W. Bell. The issue on review is whether this Court's decision in *Theama v. City of Kenosha*, 117 Wis. 2d 508, 344 N.W. 2d 513 (1984), recognizing causes of action by minor children for loss of society and companionship due to negligent injury of a parent, but announc-

ing that the holding would apply to the *Theama* case and otherwise apply prospectively, bars the cause of action in this case.

We conclude that the claim of the minor Bell daughters is not barred by the *Theama* prospectivity language. This case merits a special exception to *Theama*, based on the fact that the plaintiffs here are "similarly situated" to the *Theama* plaintiffs and equitable considerations warrant similar treatment. Accordingly, we reverse the court of appeals and remand the case to the circuit court for further proceedings.

The material facts are as follows. On October 31, 1981, Bernard W. Bell sustained permanent injuries in a motor vehicle accident. As a result of the accident, he is a quadriplegic and breathes only with the aid of a mechanical device. Bernard Bell and his wife Sandra brought suit, filing a complaint on April 27, 1982. Bernard sought damages for his injuries, and Sandra sought damages for loss of society and companionship, loss of financial and familial support, mental anguish, and compensation for the time and effort expected to be spent in the future in caring for Bernard. Bernard and Sandra Bell entered into a *Pierringer*[1] agreement with Ronald Holup, the driver of the van in which Bernard was injured, and his insurer.

Bernard Bell's three minor daughters, Stacey Lea, Kimberly Ann, and Barbara Lynn, by their guardian ad litem, Kenneth J. Dunlap, brought a claim for loss of their father's society and companionship. The Bell daughters were not part of the *Pierringer* release.

Defendants joined in a motion to dismiss the action of the Bell children, arguing that minor children have no

---

[1] *Pierringer v. Hoger*, 21 Wis. 2d 182, 124 N.W. 2d 106 (1963).

cause of action against a tortfeasor for damages suffered by them in connection with an injury to a parent. Judge Walstead, in a memorandum decision dated February 16, 1983, denied the motion. Noting that the question presented was one of first impression in Wisconsin, Judge Walstead, citing analogous Wisconsin cases, cases from other jurisdictions, and various legal authorities, reasoned that allowing a minor child's cause of action for loss of society and companionship due to negligent injury of a parent was consistent with principles of Wisconsin common law.

On March 8, 1984, this court expressly recognized that minor children have a cause of action for the loss of their parent's society and companionship caused by negligent injury to the parent. *Theama*, 117 Wis. 2d at 509. The newly created cause of action was given prospective effect, although the Theama children were given the benefit of the new law: "The change in the rule announced in this opinion is to be limited to causes of action arising on or after March 8, 1984, the date of the filing of this opinion, except that it is to be applicable to the instant case." *Theama*, 117 Wis. 2d at 528.

Following *Theama*, the defendants in the instant case joined in a motion for summary judgment to dismiss the Bell daughters' claim on the ground that the prospectivity rule set forth in *Theama* barred the Bell daughters' claim since it arose prior to March 8, 1984.[2]

Judge Walstead vacated his earlier decision upholding the cause of action and, relying exclusively on

---

[2] A cause of action, if there is one, arises on the date of plaintiff's injury. *Hunter v. Sch. Dist. Gale-Ettrick-Trempealeau*, 97 Wis. 2d 435, 442, 293 N.W. 2d 515 (1980). The accident in which Bernard Bell was injured occurred on October 31, 1981, over two years prior to the *Theama* decision date of March 8, 1984.

*Theama*, granted summary judgment for the defendants. In a decision dated October 17, 1984, Judge Walstead noted that the *Theama* holding applies to "causes of action arising on or after March 8, 1984," and that the Bell action was "commenced prior to March 8, 1984."

The court of appeals, also relying on the *Theama* rule, summarily affirmed the trial court. This court granted the Bell daughters' petition for review on January 14, 1986.

Upon review of a summary judgment decision, this court must apply the standards set forth in 802.08(2), Stats. (1983–1984)[3] in the same manner as the trial court. *Kremers-Urban Co. v. American Employers Ins.*, 119 Wis. 2d 722, 733, 351 N.W. 2d 156 (1984). Since there is no disagreement as to issues of fact, this court must determine whether the defendant moving parties were entitled to judgment as a matter of law. Section 802.08(2), Stats. This court decides questions of law independently, without deference to the decision of the trial court and the court of appeals. *Ball v. District No. 4 Area Board*, 117 Wis. 2d 529, 537, 345 N.W. 2d 389 (1984).

---

[3] Section 802.08(2), Stats., provides:

"802.08 *Summary Judgment....(2) MOTION.* The motion shall be served at least 20 days before the time fixed for the hearing. The adverse party prior to the day of hearing may serve opposing affidavits. The judgment sought shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages."

Literal application of the *Theama* prospectivity rule would bar the Bell' daughters' claim. Recognition of their claim could thus only come about if this court decides to create an exception to the *Theama* rule or if the *Theama* rule of prospective application is overturned. Plaintiffs argue that the special circumstances of this case warrant that an exception be made to the *Theama* prospectivity rule.

The general rule adhered to by this court is the "Blackstonian Doctrine." "This doctrine provides that a decision which overrules or repudiates an earlier decision is retrospective in operation." *Fitzgerald v. Meissner & Hicks, Inc.*, 38 Wis. 2d 571, 575, 157 N.W. 2d 595 (1968). This court can limit the retrospective operation of a decision and make it exclusively prospective or applicable to the case and condition its prospective operation. *Olson v. Augsberger*, 18 Wis. 2d 197, 200, 118 N.W. 2d 194 (1962). The decision to apply a judicial holding prospectively is a question of policy and involves balancing the equities peculiar to a given rule or case. *Harmann v. Hadley*, 128 Wis. 2d 371, 377–79, 382 N.W. 2d 673 (1986). A decision is given prospective effect only when there are compelling judicial reasons for doing so. *Fitzgerald*, 38 Wis. 2d at 576, citing *Dupuis v. General Casualty Co.*, 36 Wis. 2d 42, 45, 152 N.W. 2d 884 (1967).

In *Theama*, this court did not articulate the basis for its decision to apply the holding prospectively. We take this opportunity to clarify the reasons for the prospectivity rule.[4] In *Kurtz v. City of Waukesha*, 91 Wis. 2d 103, 109, 280 N.W. 2d 757 (1979), this court approved

---

[4] For a general discussion of the factors involved in deciding whether to apply a law prospectively, *see*, Fairchild, *Limitation of*

the three factors announced in *Chevron Oil Co. v. Huson*, 404 U.S. 97 (1971), for determining whether a holding should be applied retrospectively:

> "In our cases dealing with the nonretroactivity question, we have generally considered three separate factors. First, the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied, . . . or by deciding an issue of first impression whose resolution was not clearly foreshadowed . . . . Second, it has been stressed that 'we must . . . weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation . . . .' Finally, we have weighed the inequity imposed by retroactive application, for '[w]here a decision of this court could produce substantial inequitable results if applied retroactively, there is ample basis in our cases for avoiding the "injustice or hardship" by a holding of nonretroactivity.' " *Chevron*, 404 U.S. at 106–107. (Citations omitted.)

This court has noted two exceptions to the Blackstonian doctrine of retroactive operation; these have been labeled the "reliance" exception and the "administration of justice" exception. *Fitzgerald*, 38 Wis. 2d at 576. Prospective operation will sometimes be chosen when there has been great reliance on an overruled decision by a substantial number of persons and they would suffer considerable harm or detriment if the decision was retroactively applied to them. *Id.* at 576. It may also

*New Judge-Made Law to Prospective Effect Only: "Prospective Overruling" or "Sunbursting,"* 51 Marq. L. Rev. 254 (1967–68).

be chosen where retroactivity would tend to thrust an excessive burden on the administration of justice. *Id.*

One commentator has stated that the question of reliance "must be appraised in every case involving a prospective overruling." Schaefer, *The Control of "Sunbursts": Techniques of Prospective Overruling*, 42 N.Y.U.L. Rev. 631, 643 (1967). The author stated:

> "Reliance takes many forms, ranging from the clear case of the contract entered into in specific reliance upon a particular decision, to tort situations in which reliance has been found in the actual or assumed failure of a defendant to insure against the newly created risk, or to investigate the accident at the time it occurred. This latter consideration has weighed most heavily in cases involving minors, where the bar of a statute of limitations may be postponed until after a potential litigant has attained his majority." *Id.* at 643.

Implicit in the analysis of the prospectivity question in *Theama* was a consideration of the foregoing factors. Chief among the matters considered were the "reliance" and "administration of justice" factors. Since *Theama* creates a new cause of action available in tort cases, tortfeasors face a new potential liability. Prospective application of the *Theama* decision enables insurance companies and their customers to prepare for this potential risk and incorporate it when calculating insurance costs. At the same time, the insurers and insureds do not face liability for incidents arising prior to *Theama*, and thus are not unfairly forced to pay damages for an unforeseen risk. Their "reliance" on the scope of potential liability risks existing prior to *Theama* is therefore protected.

33

Further, the prospective nature of the rule results in avoiding an "opening of the floodgates" with respect to minor children's claims for loss of society and companionship for negligent injury to a parent. Wisconsin's disability tolling statute, 893.18, Stats.,[5] provides that if a person entitled to bring an action is, at the time the cause of action accrued, within the age of 18 years, "the time of such disability is not a part of the time limited for the commencement of the action," except that it cannot be extended "in any case longer than one year after the disability." Many lawsuits, which otherwise have been settled or decided, would suddenly come to life, in the event that the *Theama* holding creating a new cause of action was applied retrospectively. This potential flood of litigants would pose a substantial burden on the administration of justice.

One of the cases relied on in *Theama* is *Shockley v. Prier*, 66 Wis. 2d 394, 225 N.W.2d 495 (1975), which recognized the parents' right to recover for loss of aid,

---

[5] Section 893.18(2), Stats., provides:

"893.18 *Transition; persons under disability* .... (2) If a person entitled to bring an action mentioned in this chapter, except actions for the recovery of a penalty or forfeiture or against a sheriff or other officer for an escape, or for the recovery of real property or the possession thereof is, at the time the cause of action accrued, either

"(a) Within the age of 18 years, except for actions against health care providers; or

"(b) Insane; or

"(c) Imprisoned on a criminal charge or in execution under sentence of a criminal court for a term less than life, the time of such disability is not a part of the time limited for the commencement of the action, except that the period within which the action must be brought cannot be extended more than 5 years by any such disability, except infancy; nor can it be so extended in any case longer than one year after the disability ceases."

comfort, society, and companionship of a child during minority when the loss is occasioned by another's negligence. In *Shockley*, this court determined that the change brought about by the decision would apply to the *Shockley* case but would otherwise be limited to causes of action arising on or after February 4, 1975. 66 Wis. 2d at 404-05.

The cause of action created by *Shockley* inured to the benefit of parents of children. The applicable statute of limitations in these negligence actions is three years. 893.54(1), Stats.[6] The cause of action created by *Theama* inures to the benefit of minors. The applicable statute of limitations, as noted, applies in a way that may extend the limitations period well beyond the typical three year period that applies to plaintiffs not under a disability. If there were reasons to apply the *Shockley* holding prospectively based upon a concern for a potential flood of litigants, these reasons loom larger in the *Theama* situation.

While the foregoing factors form the core of the court's analysis when it is faced with the question of whether to apply a holding retroactively, we note that there are other significant considerations. In creating a new cause of action, as was done in *Theama*, it is often desirable to make a clean break with the past and initiate a fresh start. As one commentator has put it:

"Prospective limitation . . . allows the courts freedom to make needed changes unrestrained by concerns about the effect of those changes on past events.

---

[6] Section 893.54 (1), Stats., provides:

"893.54 *Injury To The Person.* The following actions shall be commenced within 3 years or be barred:

"(1) An action to recover damages for injuries to the person."

35

While the cornerstone of the technique is the protection of justified reliance, its use also promotes the stability, certainty and finality of judicial decision-making. Further, it is argued, in insulating precedent from changes in personnel on the state or federal high courts, prospectivity enhances public confidence in the fairness and objectivity of the judiciary." Moody, *Retroactive Application of Law-Changing Decisions in Michigan*, 28 Wayne L. Rev. 439, 443 (1982) (Footnotes omitted.)

The overarching concern present in a decision to create a new cause of action is that the change works equitable results, i.e., that the element of fairness is preserved. Fairness in this context is best defined by the principle that those parties "similarly situated" are treated similarly.

In setting forth conditions applicable to the prospective operation of a decision, this Court has been conscious of the principle that similarly situated parties should be treated the same, and has allowed parties other than parties to the law-changing case to benefit from the decision. *See, In Interest of J.V.R.*, 127 Wis. 2d 192, 202, 378 N.W. 2d 266 (1985). Perhaps the key consideration in determining whether to allow an exception to the prospectivity rule here is the question of what is meant by the phrase "similarly situated."

One observer has noted that the goal of treating similarly situated parties similarly is something that courts have agreed upon as an important consideration in dealing with matters related to retrospective and prospective laws: "No one can quarrel with the goal. But the question is, Similarly situated with respect to what?" Shaefer, *Prospective Rulings: Two Perspectives*, 1982 Supreme Ct. Rev. 1, 8.

Defendants have conceded that this court has employed the "similarly situated—similar treatment" rule as a basis for carving out individual exceptions to rules of law given prospective application and whose cut off date would otherwise bar the claim asserted. They argue, however, that in these cases, the basis for concluding that the parties were "similarly situated" was that the parties' cases had similar procedural histories and it was solely a matter of chance that the law-changing case made it to this court first. Thus, the parties to the law-changing case were accorded the benefit of the law-changing decision, while the claims of parties seeking similar relief were barred due to the prospective nature of the law-changing decision. Exceptions were granted on the ground that the timing of the case was crucial and that in this respect the parties were "similarly situated."

One of the cases cited by defendants is *Harmann*. In *Harmann*, this court dealt with a rule enunciated in *Koback v. Crook*, 123 Wis. 2d 259, 276, 366 N.W. 2d 857 (1985), holding social hosts liable for personal injury caused by the conduct of a minor driver to whom social hosts negligently furnish intoxicating beverages. The *Koback* court declared that this holding would be applied prospectively, stating: "[T]here shall be liability only for the negligent conduct of a social host who furnishes liquor to a minor when the conduct which causes injury occurs on or after September 1, 1985." *Koback*, 123 Wis. 2d at 277.

Although a literal application of the prospective rule set forth in *Koback* barred the claim asserted by the *Harmann* plaintiffs, this court held that the procedural history of *Harmann* warranted that it be treated as an

37

exception to the *Koback* rule of prospectivity. *Harmann*, 128 Wis. 2d at 374. This court noted that the plaintiffs in both *Koback* and *Harmann* pursued the same claims in the circuit court, the court of appeals, and the supreme court during the same time period. *Id.* at 384. Reasoning that individuals similarly situated should be treated similarly, it was held that the *Harmann* case should be treated as an exception to the *Koback* rule of prospectivity. *Id.* at 384-86.

It was recently noted that the *Harmann* decision "creates a narrow exception to this court's pronouncements regarding the prospective effect of its decisions." *Delvaux v. Vanden Langenberg*, 130 Wis. 2d 464, 491, 387 N.W. 2d 751 (1986). In *Delvaux*, this court stated that the *"Harmann*-type result" was "based on considerations of equity when sufficiently similar procedural histories are shared by factually and legally similar cases." *Id.* at 492. The procedural similarity in the *Harmann* decision was clear because it was mere chance that this court heard the *Koback* case prior to the *Harmann* case. This fact led the *Delvaux* court to describe *Harmann* as representing a "narrow exception" to the prospectivity rule.

At oral argument, the Defendants cited *Jepson v. Stilen*, Nos. 85-1832, 85-1833, 85-2125, a per curiam opinion filed by this court on September 17, 1986. The issue in *Jepson*, 133 Wis.2d 35, 393 N.W. 2d 93 (1986), was whether the court should make an exception to the *Koback* rule of prospectivity. This court stated: "Because all three actions arise out of the same accident, an incident which occurred prior to the accidents in both *Koback* and *Harmann*, we believe they should be entitled to utilize the theory of liability in *Koback.*" *Jepson*, at 37-38

38

The *Jepson* action was commenced on October 5, 1982. The Defendants moved for summary judgment and on June 14, 1983 the trial court denied the motion. Two other actions arising out of the same accident were subsequently filed and all three actions were consolidated. As of the date of the *Koback* decision, April 30, 1985, all three actions were pending.

*Koback* recognized a theory of liability similar to that advocated by the *Jepson* plaintiffs, but its rule was made applicable prospectively, to causes of action arising on or after September 1, 1985. On the basis of *Koback*, all three of the *Jepson* actions were dismissed by the circuit court on June 6, 1985. The court of appeals summarily affirmed.

This court noted that the *Jepson* action involved a complaint that was filed prior to the complaints in *Koback* and *Harmann* and, "but for favorable circuit court treatment, might have reached this court first and served as the vehicle for the change in law announced in *Koback.*" *Jepson*, At 6. Citing *Harmann*, 128 Wis. 2d at 383, we noted that this was the type of "chance, but determinative, circumstance" that should not work to a party's disadvantage. *Id.*

This court also saw fit to grant the same exception to the two *Jepson* companion cases despite the fact that they were commenced after the *Koback* and *Harmann* decisions. This court stated: "[W]e believe that within the context of this case the right of action accruing to one party as the result of a particular accident should be available to all similarly situated parties regardless of when the actions, otherwise timely, were commenced in relation to each other." *Id.* We note that the concept "similarly situated," although employed in the context of a single accident out of which all the claims arose, was

not used in the limited sense of describing parties that shared a highly similar or parallel procedural history. The plaintiff parties in the three actions brought in the *Jepson* case were described as "similarly situated" despite different procedural histories.

One consequence of a decision to apply a judicial holding prospectively is that this decision may itself, in its application, produce inequities. As noted in *Harmann*, one apparent inequity may be that "[t]he party who happens to present the question when it is ripe for consideration is the chance beneficiary of our decision, to the exclusion of all others who may have been diligently pressing for the change in the law." *Harmann*, 128 Wis. 2d at 382. We are persuaded that just such an inequity would occur in the instant case, were we to insist on applying the *Theama* rule of prospectivity literally and bar the Bell daughters' claim.

The instant case does not evince a shared procedural history with *Theama* in the same way that *Harmann* paralleled the timing of the *Koback* case.[7] Nevertheless, we are convinced that the Bell

---

[7] One of the chief reasons that this court granted the *Harmann* plaintiffs an exception to the *Koback* prospectivity rule was that there was a possibility that the *Harmann* case would have made it to this court prior to *Koback*, had the *Harmann* petition to bypass not been denied. *Harmann*, 128 Wis. 2d at 386. A judgment was filed in the *Harmann* case before one was filed in *Koback*, and the Harmanns filed a petition to bypass the court of appeals five months before the Kobacks did. *Id.* at 382–83.

In the instant case it does not appear that the Bells could have preceded *Theama* and been the law-changing case. The initial memorandum decision by Judge Walstead, denying summary judgment to the defendants and recognizing the Bell daughters' claim, was dated February 16, 1983. An amended order prepared in accordance with the memorandum decision was signed March 16, 1983.

daughters are "similarly situated" to the *Theama* plaintiff children and should be treated similarly.

We find it significant that the trial court considered the question of whether a cause of action existed prior to the *Theama* holding, and concluded that the plaintiff daughters had a cause of action. Significantly, the trial judge employed much the same reasoning in reaching his conclusion as did this court in *Theama*. In many respects, *Theama's* analysis resembled the trial judge's analysis and confirmed the direction in which he determined Wisconsin law was moving.

By the time of the *Theama* decision, March 8, 1984, the Bell daughters had pleaded, raised, and pursued their claim. Further, they had received a favorable decision by the trial judge upholding their claim. It is inequitable to deny the Bell daughters' claim on the basis of a literal reading of a prospective rule, given the foregoing factors. We find that the plaintiffs here should receive benefit from an exception to the *Theama* prospectivity rule.

We also note that our decision to grant an exception to the *Theama* prospectivity rule does not necessitate the overturning of a completed trial and the initiation of a new trial. The result in the present case is therefore consistent with statements made by this court in *Jepson* concerning the distinction between granting an exception to a prospective rule in cases that are "pending" as opposed to cases where the trial has already been completed.

---

The petition for review in the *Theama* case was accepted on March 9, 1983, one week before the order in the instant case was signed. Hence, even if the Bells had been unsuccessful on the initial summary judgment motion, and taken an appeal, they would not have reached this court prior to the Theamas.

41

We choose not to state any hard and fast rule as to how to determine when procedural histories are "sufficiently similar" to warrant that an exception be made to a law applied prospectively. We do note, however, that equitable considerations may affect the determination of whether the parties are "similarly situated." We thus see the "exception" question to be one best determined on a case by case basis. In the instant case, we have found the fact that the trial judge ruled favorably, initially, on the status of the claim, and that the plaintiff children have persistently pursued their claim at each stage of the proceedings, to be determinative.

*By the Court.*—The decision of the court of appeals is reversed and cause remanded to the circuit court for further proceedings consistent with this opinion.

SHIRLEY S. ABRAHAMSON, J. *(dissenting).* With this decision, the majority has in effect eliminated prospective only judicial decisions. From now on, when the court declares that a decision has prospective application, those wishing to take advantage of the new rule of law enunciated in the decision may request this court to examine their cases and to decide—on a case by case basis—whether the new rule of law should be applied retroactively to their case. Because the majority decision departs substantially from precedent, increases litigation unnecessarily and offers no guidance to the litigants, the circuit courts or the court of appeals, I dissent.[1]

---

[1] I agree with those parts of Justice Steinmetz' dissent which criticize the majority opinion for engrafting an exception to the prospective application of the rule of law relating to the child's cause of action.

In *Theama v. City of Kenosha*, 117 Wis. 2d 508, 344 N.W.2d 513 (1984), the court, selecting one of several alternative rules of prospectivity, limited a child's cause of action for loss of a parent's society to causes of action arising on or after a date certain, namely, March 8, 1984, except that the new rule was applicable to the parties raising the issue, namely, the *Theama* plaintiffs. No ambiguity here. A clearer statement of this type of prospectivity rule would be hard to find.

The cause of action in the case at bar arose before March 8, 1984.

The circuit court took our *Theama* decision seriously. It dismissed the plaintiff's cause of action.

The court of appeals took our *Theama* decision seriously. It affirmed the dismissal of the plaintiffs' cause of action.

This court, however, does not take its *Theama* decision seriously.[2] It concludes that the plaintiffs in this

---

[2] "Taking Supreme Court opinions seriously emerged as a topic of discussion at a lunch I attended last year with several Supreme Court law clerks. Somehow we came round to a particular three-judge district court case which I confidently opined was 'certain' to be reversed on the basis of principles announced in prior opinions. The clerks were models of politeness and circumspection; never once did they even intimate that the judgment would (by divided vote) be affirmed. But shortly after I had announced my views of that case, one of the clerks began to prod me, asking whether I simply took the Court's opinions 'too seriously.' I allowed that I had been around long enough to recognize that my notions of principled adjudication had all they could do to survive in the Supreme Court, given the force of the conflicting pressures on that body. Turning to a former student, I then engaged in what I thought to be an outstanding example of the Socratic dialogue:

"Q: When you were on the law review, did you take seriously what was said in Supreme Court opinions?

case are not barred by the *Theama* prospectivity language, because "these plaintiffs are similarly situated to the *Theama* plaintiffs and warrant similar treatment." At 2. In order to reach this result the majority must virtually ignore not only *Theama* but also *Delvaux v. Vanden Langenberg*, 130 Wis. 2d 464, 387 N.W.2d 751 (1986), decided less than six months ago.[3]

When the court announces a *Theama*-type rule of prospectivity, the court knows that there are many litigants, like the *Theama* plaintiffs, who have been pressing for a change in the law. The goal of our legal system is equal treatment for all those similarly situated. When

---

"A: Yes.

"Q: When you spent the summer clerking for the *X* firm, did you take seriously what was said in Supreme Court opinions?

"A: Yes.

"Q: When you clerked on the Court of Appeals, did you take seriously what was said in Supreme Court opinions?

"A: Yes.

"Q: When you go into practice next year, will you take seriously what is said in Supreme Court opinions?

"A: Yes.

"Q: Do you think it is a little odd that the only institution that does not take seriously what is said in Supreme Court opinions is the Supreme Court itself?

"A: (A smile)."

Monaghan, *Taking Supreme Court Opinions Seriously*, 39 Md. L. Rev. 1, 1-2 (1979) (note omitted).

[3] The majority acknowledges that this case is not analogous to *Harmann*. Slip opinion at page 13. In *Harmann v. Hadley*, 128 Wis. 2d 371, 382 N.W.2d 673 (1986), we found a procedural history sufficiently similar only where the action of this court itself prevented a pending case from becoming the case in which the legal principle was announced. *Harmann*, 128 Wis. 2d at 382-83. The chance, but determinative, circumstance in *Harmann* was not that the plaintiffs had been "diligently pressing for the change in law," but rather this court's oversight.

44

the court adopts a *Theama*-type prospectivity rule, it is saying, however, that the first party who successfully challenges the existing rule of law in the highest state court should be regarded as having set himself or herself apart.[4] By selecting the *Theama*-type prospectivity rule, the court has made a policy decision. It has concluded that the potential inequity to the litigants who have cases like *Theama* pending in the judicial system is offset by the potential inequity to those who have reasonably relied on the old rule. By selecting the *Theama*-type prospectivity rule the court has balanced the equities and declared that except for the parties involved in that case, the new decisional law should, as a matter of fairness, apply only as of the date set by the court.

Had the court intended to give the benefit of the new cause of action to litigants like the plaintiffs in this case who had cases pending in the judicial system when *Theama* was decided, the court could have easily accomplished this result. All the court had to do was select a different prospectivity rule.[5] The court could have

---

[4] "Ordinarily the party who successfully persuades the court to overrule an earlier decision receives the benefit of the decision. Although such a result may be harsh to the defendant it is fair to the party who has gone to considerable effort and expense pursuing the claim. A contrary result would discourage people from bringing claims. A totally prospective holding is 'prophetic dictum.' . . . When a new rule of liability is 'sunburst' to apply to the parties in the case and to future conduct, the application of the rule may produce inequities. The party who happens to present the question when it is ripe for consideration is the chance beneficiary of our decision, to the exclusion of all others who may have been diligently pressing for the change in the law." *Harmann v. Hadley*, 128 Wis. 2d 371, 381–82, 382 N.W. 2d 673 (1986).

[5] For cases adopting a different type of prospectivity rule, see; *e.g.*, *Bielski v. Schulze*, 16 Wis. 2d 1, 19, 114 N.W.2d 105 (1962);

applied the new rule of law to causes of action arising after March 8, 1984, and to all those cases still pending in the judicial system, that is, to cases not yet "finalized."[6] As a result of this case, the court appears to be reshaping the rule of prospectivity it deliberately selected in *Theama* into the "not yet finalized" rule of prospectivity, using a case by case approach.

The majority grants a cause of action to the plaintiffs in this case but refuses to explain what will happen to other persons whose cause of action arose before March 8, 1984. The majority expressly "choos[es] not to state any hard and fast rule as to how to determine when procedural histories are 'sufficiently similar' to warrant that an exception be made to a law applied prospectively." The majority merely announces "the 'exception' question to be one best determined on a case by case basis." At 14.

It is one thing for a court to set forth some of or all the criteria for determining what constitutes "sufficiently similar procedural histories" and to say that the criteria must be applied on a case by case basis. It is far different for the court to say, as it does in this case, that it will not set forth any criteria to guide a court in making its case by case determination of "sufficiently similar procedural histories." By refusing to set forth any criteria, the court fails to fulfill its institutional function of giving guidance to the litigants, the circuit courts, and the court of appeals.

---

*Wangen v. Ford Motor Co.*, 97 Wis. 2d 260, 300–301, 294 N.W.2d 260 (1980).

[6] For cases adopting a "finalized" type of prospectivity rule, see, e.g., *La Claw v. State,* 41 Wis. 2d 177, 187, 163 N.W.2d 152 (1968); *State v. Johnson,*—Wis. 2d—,—,—N.W.2d (1986).

As a result of this case, this court's limiting a decision to prospective application means that this court will decide on a case by case basis when to apply the decision retroactively. The technique of declaring a judicial decision to have prospective application only, designed to protect those who relied on an existing rule or set of rules, no longer provides such protection and now subjects persons to additional litigation just to determine whether the old or new rule of law applies. The decision today will produce unnecessary litigation that this court could prevent by articulating clear rules and adhering to them.

The majority justifies its holding in the name of equity,[7] but the values of predictability and certainty in the law that the majority's holding undermines are themselves important guarantors of equity. Equity is best achieved not by resorting to the unguided intuition of judges, but by establishing clear rules and applying them fairly to each case. While justice requires rules flexible enough to allow a decisionmaker to reach equitable results, it does at a minimum require rules. I dissent.

I am authorized to state that JUSTICE WILLIAM A. BABLITCH joins in this dissent.

STEINMETZ, J. *(dissenting).* After extolling the virtues of prospective only holdings in general and justifying the prospective only holding in *Theama v. City of Kenosha,* 117 Wis. 2d 508, 344 N.W.2d 513 (1984), the majority opinion concludes that Stacey Lea, Kimberly

---

[7] The majority ignores the inequity it perpetrates on those litigants whose cause of action arose before March 8, 1984 and who took our *Theama* decision seriously and did not appeal the dismissal of their cases.

Ann, and Barbara Lynn Bell's claims merit a special exception to the prospectivity holding in *Theama* on grounds that the children were "similarly situated" to the *Theama* plaintiffs and equitably should be given similar treatment. At 2. The majority states that: "The overarching concern present in a decision to create a new cause of action is that the change works equitable results, i.e., that the element of fairness is preserved. Fairness in this context is best defined by the principle that those parties 'similarly situated' are treated similarly." At 9. I would contend that the Bell children were not "similarly situated" to the Theama children by any standard previously used by this court, and that the majority decision creates an injustice to the defendant, Ronald E. Holup, by rendering a *Pierringer* release entered in good faith by his insurer and the Bell parents useless in this case, leaving Holup with no liability protection or a defense by his insurer. It is not explained in this record why Holup is not a party to the appeal unless it is that his insurer has been released from all further defense through the *Pierringer* release.

The decision to make a prospective only ruling involves the balancing of countervailing interests. Making a ruling prospective only recognizes that the interests of potential defendants as a group take priority over the interests of potential plaintiffs as a group before the new rule is recognized. The majority states exceptions to such a rule must distinguish the particular plaintiff before the court will except from the group of general plaintiffs who will generally be denied the cause of action. That particular plaintiff then would bear the burden of proving that he is so different from the general plaintiffs that the cause should be allowed.

48

If such exceptions are to be allowed, the criteria for allowing them should be clear. Without clear criteria, each case becomes a new "balancing" of countervailing interests. If every case involves this balancing on a "case by case" basis as suggested by the majority, "prospective" ruling is gutted of its meaning and goal. No particular trial judge or counsel could know what "similarly situated" persons are.

*Harmann v. Hadley*, 128 Wis. 2d 371, 384, 382 N.W. 2d 673 (1986), specifically determined that a new balancing was necessary when this court mistakenly rejected a petition for bypass containing the same issue that was eventually decided in another case. It was clearly a narrow case based purely on a procedural history mirroring the law-making case but for this court's rejection of the issue earlier. In *Harmann* we excepted the plaintiffs from the prospective only holding of *Koback v. Crook*, 123 Wis. 2d 259, 276, 366 N.W. 2d 857 (1985), since the plaintiffs in *Harmann* were denied the opportunity to be the plaintiffs bringing about the new common law rule due to this court's oversight in not accepting the bypass petition. We caused the *Harmann* plaintiffs not to be the first beneficiaries of the newly created cause of action by rejecting their bypass petition.

The majority now widens the exception one step and invites further steps. The majority allows the plaintiffs to proceed because the trial court recognized the cause of action before we did.[1] This depended, however,

---

[1] Plaintiffs complained that "but for" the trial court's favorable finding, they would have been the law-making case and would have enjoyed the prize of being the only case to be allowed a retrospective application of the rule as *Theama* was. The record does not reflect this, however.

not on the procedural timing at this court, but on the judicial activism of the particular trial judge. Other plaintiffs may have had their actions rejected at the trial court because that court exercised judicial restraint and did not attempt to "predict" what this court would do. They too would suffer because of a prospective only application. Additional plaintiffs' attorneys, not willing to use the court's and their clients' time pursuing a claim not previously recognized in Wisconsin law, elected not to plead such a claim when a trial judge might have heard and accepted such a claim. The owners of such a claim, the children who lost parental consortium, would be the true victims, although it was trial counsel who elected not to pursue the claims.

Injustice can be found at every level when a claim is allowed prospectively or retroactively. However, in *Theama* the injustice to potential defendants and to the administration of justice in general was determined to be greater in comparison to the injustice suffered by potential plaintiffs. Such considerations were foreseeable and were considered when the rule of prospectivity was announced in the rule-making case. Injustice created by this court, as in *Harmann*, was not foreseeable,

---

The trial judge entered a memorandum decision on February 16, 1983. However, under sec. 809.10, Stats., this decision was not a final order from which either plaintiff or defendant could appeal. Therefore, even if this decision were adverse to the plaintiffs, no appeal could have been commenced until a final order had been entered. Although the plaintiffs "knew" they would win the issue at the trial court, the trial court had not yet effected a change in the law.

The petition for review in *Theama* was accepted on March 9, 1983, one week before the final order was signed by the trial court on March 16, 1983. There was, therefore, no point where the petitioners could have attempted an appeal to this court before *Theama*, even if the trial court's ruling had been adverse to them.

and therefore a narrow exception was created. The majority now whittles away at a prospective barrier raised to protect potential defendants by citing foreseeable hardships considered when the rule was announced. Although there are no hard and fast rules of when a new cause of action should be prospective only after a prospective only application is announced, that prospective application should be "hard and fast." At 14.

The difficulty of finding a balance on a case by case basis is that such an analysis is highly fact oriented. Since this court cannot rule on all the potential cases that could have come under the new rule, it should attempt to direct both the lower court and the practitioner when to grant such an exception, when to bring such a claim, or when to settle a claim already in progress. In the instant case, it is clear that Mr. Bell has suffered a serious injury from which he may never recover. It is also clear that his children will lose his demonstrable love and companionship perhaps for the rest of their lives. When one hears such lamentable facts, it is easy to be tempted to find a way around the "rules" to allow compensation for the children, even though economic compensation can never substitute for the loss.

However, the Bell children come before this court as the single members of an entire class of children—all of which have been denied relief. Defendants too represent a class—the class of defendants whose rights have been protected by a prospective ruling. For the children, it is normal to be moved emotionally by pointing to their and their parents' particular tragedy. Defendants, however, must point to their concerns as a class, not as individuals. Although the court previously determined that those class interests of the defendant of

reliance and fairness were greater than the class of plaintiffs represented by the Bell children, the majority cannot bring itself to deny the Bell children a chance for a remedy. Yet, it cannot give a specific reason why these defendants are different than other protected defendants and should suffer liability where others are immune. In *Harmann*, the court concluded that the defendants were situated similarly to the defendants in *Koback*. The majority has not considered the defendants in this case but only the plaintiffs' alleged similar situation.

One specific defendant, Ronald Holup, will suffer a specific as distinguished from a class harm because of the majority decision. Holup's insurer, Home Mutual Insurance Company, relied on the law as it was before any suits in this case were commenced and settled with Mr. and Mrs. Bell. Home exhausted its entire policy limits leaving Holup without any right to further defense by Home by specific language in the policy. However, since Home secured a *Pierringer* release from Mr. and Mrs. Bell, the only parties with a recognized cause of action at the time, there were no possible claims of Holup for which he would need a defense. Now, through a third party action and subsequently direct action, Holup is being sued by the children. His insurer protected Holup in reliance on the law before the suit was started, and Holup must now defend against the children's independent claims, even though what his insurer attempted to purchase for him was "complete" protection from suits. It is certain that at the time of the release Mr. and Mrs. Bell intended to relinquish all rights they had against Holup, and there was no intent for the children to sue. Even the Bell family attorney, who also served as the guardian ad

litem, did not name Holup or Home in the original complaint.[2]

The majority states "we have found the fact that the trial judge ruled favorably, initially, on the status of the claim, and that the plaintiff children have persistently pursued their claim at each stage of the proceed-

---

[2] In a hearing before the court on October 10, 1983, the Bell family attorney stated:

"Your Honor, we made an appearance before the court on October 3rd, asking the court that the pleadings be amended so that we could introduce new defendants in the cause of action. One of the defendants that we asked the court to allow us to have in this cause of action was Home Mutual Insurance Company. We ask that they be part of the cause of action action for two reasons. Reason No. 1 is that the court had made a ruling that the children are now parties in their own right. Because of this, they have a claim against Home Mutual Insurance Company. A release was signed by both Bernard Bell and Mrs. Bell, who are two of the defendants releasing Home Mutual, but no release was signed by the children because at that time there was no determination as to whether or not the children had a separate and distinct cause of action.

"Subsequent to that time it has been determined that they do have a separate and distinct cause of action, and therefore, on that basis, Your Honor, we ask that Home Mutual be made a party defendant."

At the same hearing, the attorney for Home Mutual, argued:

"We have a $25,000 policy. That sum has been paid, and as a matter of fact, interestingly enough, the negotiations of the settlement was (sic) made by [the Bell family attorney], and he arranged a settlement where he got the complete policy limits ... It is my claim that at the time it was the idea of the parties that that would be a complete release of all parties, but I suspect that the release does not support that."

These statements show that the Bell family attorney acting as representative for the parents, negotiated a settlement agreement for the entire $25,000. Then later he had himself appointed guardian ad litem and for the first time brought suit on behalf of the children.

ings, to be determinative." At 14. Obviously, the majority does not consider a notice of claim or signing of a *Pierringer* release to be a stage of the proceedings, because it is clear that the children did not assert any rights at that stage. Both parties relied on the prior law, and, at least initially, respected the spirit of the release.[3] Then, even though the children's claim was not presented at the time the release was signed, subsequently those claims were demanded seeking a change in the law to enforce a new claim against Holup. The majority opinion labels the recognition of a claim by children for loss of society and companionship as a new cause of action.

Given this specific reliance by Holup, Home, Mr. and Mrs. Bell, and the Bell family attorney in entering a release contract, I see a specific instance of the injustice that prospective ruling is intended to prevent. Certainly if Home or Holup knew that this contract would not protect him to the limits of his policy, they could have exercised their option and demanded a full trial. Since Holup now has no protection whatsoever and no right to an insurer supplied defense, he gained nothing through this release contract insofar as the Bell children's claims are concerned.[4] Assuming Home Mutual wished to purchase the maximum protection given a limited fund

---

[3] *See* Footnote 1, *supra*.

[4] Home Mutual's policy contained a clause stating:

"We will defend any suit or settle any claim for these damages as we think appropriate, but we will not defend or settle after our limit of liability for this coverage has been reached."

On the basis of this clause, and the payment of Home's limits, it was dismissed from defending the suit on October 25, 1983. As noted by plaintiffs' counsel at oral argument, Holup did not file a brief with this court and did not appear at argument.

54

for Holup, as any good insurer would, it may not have settled such a claim unless the Bell children were included.[5] The exclusion of Home and Holup in the Bell family attorney's first complaint seems to suggest that although the children were not named in the release, there was a tacit understanding that any potential interests the children might have had were relinquished by the release.[6] The majority, however, would circumvent the intent of the contracting parties and allow the action to proceed against Holup.

When the majority places "similarly situated" in quotes, it must have derived some specific meaning from another case or source, so it is not a term of art conceived in this case. I believe the majority has tortured the concept of "similarly situated" as stated in *Harmann* and expanded that narrow exception to a prospective only ruling. The majority notes that this characterization was confirmed by *Delvaux v. Vanden Langenberg*, 130 Wis. 2d 464, 491, 387 N.W.2d 751 (1986). *Harmann* was decided because of a fortuitous event—this court's denial of a petition to bypass on the same issue just five months before. Like the plaintiffs in *Delvaux*, there was no "fortuitous event" which prevented the Bell children from bringing the law making case. This is conceded by the majority in footnote seven of the majority opinion.

Although the majority opinion cites other decisions where exceptions were made to a "prospective only"

[5] At the October 13 hearing, the attorney for Home Mutual, expressed his consternation:

"Home has done what every insurance company is urged to do, and when it does, it damns you if you do, and it damns you if you don't."

[6] See *supra* note 1.

rule, the "exceptions" were announced in the case that made the change in the rule with the justification for the exception.[7] This limited prospectivity approach avoids a "case by case" erosion of an announced rule, and gives clear guidance to the lower courts.

If the majority opinion is not based on a similar procedural history, the majority must base its definition of "similarly situated" plaintiffs on the factual similarities of *Theama* plaintiffs and the litigants in the instant case. To that end, I will review the facts of these cases.

In *Theama,* Mr. and Mrs. Theama and their children, Tracy and Terry, by their guardian ad litem, were suing the city of Kenosha together in one suit. All of the consortium claims were joined with the personal injury claim of Mr. Theama, the physically injured party. None of the claims of any of parties had been settled, and the city of Kenosha had denied the claims of both the parents and the children and was defending against both the legal basis and the merits of all the claims. No releases were signed by the Theama parents or children when this court finally considered the case.

On March 5, 1982, Bernard and Sandra Bell signed a *Pierringer* release of Home Mutual and Ronald Holup, prior to the filing of any complaint in this action. The original complaint, filed on April 27, 1982, did not name

---

[7] *See e.g., In Interest of J. V.R.*, 127 Wis. 2d 192, 202, 378 N.W.2d 266 (1985) states:

"This is the first opportunity this court has had to consider the requirements of sec. 48.18(2), Stats. Accordingly, this ruling shall have only prospective effect, except that this ruling shall apply to this case and to other cases which have not been finalized on the date of the release of this opinion if the juvenile properly objected to the form of the waiver petition at the time of the waiver hearing. It would be contrary to public policy to reopen completed cases for which direct review is no longer available."

Holup or Home Mutual as parties. The guardian ad litem for Stacey Lea, Barbara Lynn, and Kimberly Ann Bell, was not appointed until April 27, 1982, even though he represented the Bell family before that date, at least at the time the release was executed. Holup and Home Mutual were joined as third-party defendants in a complaint for contribution joined as third-party defendants in a complaint for contribution by Wisconsin Power and Light which was filed on May 20, 1982. These third-party contribution claims were dismissed on October 21, 1982, for any claim of contribution resulting from a judgment for the parents by virtue of the *Pierringer* release. The trial court ruled that contribution claims that might arise from judgments for the children, while not yet recognized by law, were not dismissed by virtue of the release. On September 19, 1983, the children alone, by their guardian, filed an amended complaint naming Home Mutual and Holup as first party defendants against the children's claims. On October 25, 1983, the trial court signed an order dismissing Home Mutual Insurance Company for (1) all claims by any party by virtue of exhaustion of its policy limits, $25,000; and (2) the lack of any further duty to defend Ronald Holup. By this same order, the trial court attempted to dismiss Holup for all claims of Bernard and Sandra Bell by virtue of the *Pierringer* release. However, since Bernard and Sandra Bell never filed suit against Holup, this dismissal was not necessary. The plaintiffs' family attorney and guardian ad litem, objected to this order because Bernard and Sandra Bell never brought suit against Holup and dismissal was therefore inappropriate.[8] However, the record does not

---

[8] The Bell family attorney in his letter of October 14, 1983, stated:

reflect that the order was rescinded, or any change was made in the order, and therefore Home Mutual Insurance is no longer a defendant in this action.

These facts indicate that the Bell children were not "similarly situated" procedurally or chronologically to the Theama children. Given that fact, "similarly situated" can mean anything from "identical to" or "having brought a cause of action for loss of parental consortium any time after the accident happened in *Theama*," *i.e.*, after June 27, 1978. Of course, the latter interpretation would greatly decrease the realm of the prospectivity.

In *Theama*, 117 Wis. 2d at 525-26, we recognized that: "Because each child of an injured parent would possess his or her own cause of action, multiple lawsuits could potentially arise from one occurrence. However we note that in the instant case, the claims of the minor children were combined with those of the father and mother. Therefore, the issue of multiple claims is not before us in this case."

Although *Theama* specifically declined to rule on the issue of multiple claims, the facts of the instant case clearly involve multiple claims being brought against a tortfeasor who would otherwise be dismissed by virtue of a *Pierringer* release. Therefore, the question of multiple claims is directly before the court. The Bell children cannot cite *Theama* to justify multiple claims; *Theama* specifically declined to decide the issue. The Bell chil-

---

"We object to this Order on the following grounds. Paragraph 2 states that all causes of action of Bernard W. Bell and Sandra Bell vs. Ronald E. Holup shall be dismissed on the merits without costs. *There is no cause of action in this case of Bernard W. Bell or Sandra Bell against Ronald E. Holup.* Ronald E. Holup was brought into this matter as a 3rd party defendant. Any Order dismissing Ronald E. Holup in this matter is therefore inappropriate." (Emphasis added).

dren are therefore dissimilarly situated from the Theama children, since the facts that the Bell children base their claim on raise an issue that did not need to be decided to grant the Theama children their cause of action.

The majority can reach the result it did if it considers the issue of multiple claims immaterial. However, a specific discussion of the multiple claims issue should be undertaken. A *sub silentio* ruling without considering the precedent would lead to speculation on the exact meaning of the majority opinion. I would require mandatory joinder of the children's claims for loss of a negligently injured parent's consortium.

*Theama*, 117 Wis. 2d at 511, recognized that a child's cause of action was logically implied by *Shockley v. Prier*, 66 Wis. 2d 394, 225 N.W.2d 495 (1975), which allowed a parent to recover for the loss of a negligently injured child's consortium, and *Moran v. Quality Aluminum Casting Co.*, 34 Wis. 2d 542, 150 N.W.2d 137 (1967), which allowed a wife to recover for the loss of her negligently injured husband's consortium. However, *Shockley* concluded: "that a parent may maintain an action for loss of aid, comfort, society and companionship of an injured minor child against a negligent tortfeasor *provided, and on condition, that the parent's cause of action is combined with that of the child for the child's personal injuries.*" *Id.* at 404. (emphasis added.) *Moran*, 34 Wis. 2d at 558, also concluded "that a wife may maintain an action for loss of consortium of her husband against a negligent tort-feasor *provided, and on condition, that her cause of action is combined with that of her husband for his injuries.*" (Emphasis added). Although the *Moran* rule was modified by *Fitzgerald v. Meissner & Hicks, Inc.*, 38 Wis. 2d 571, 581-82, 157 Wis.

2d 595 (1968), it did not consider the possibility that some claims might be barred by a different statute of limitations, since the statute is the same for husband and wife.[9] It would only be logical to extend these joinder requirements to a child's cause of action for loss of a negligently injured parent's consortium. Because each parent suing for the loss of a child can only have one claim, the maximum claims possible under *Shockley* is three, one for the actual physical injury, and one for each parent's loss of the child's consortium. However, the number of claims possible under *Theama* is limited only by the parents' previous proclivity to procreate. Since the multiple claim problem is exponentially greater with children, the need to limit its exercise is much greater.[10] Logic dictates that if children are

---

[9] *Fitzgerald,* 38 Wis. 2d at 581–82 allowed the wife to proceed under the following circumstances:

(1) Where the wife joins the husband's claims where the husband has already started a suit.

(2) If the husband's claim has already gone beyond trial, the wife can only sue loss of consortium other than the loss of the husband's services.

(3) "In the event the husband has not commenced an action the wife should be allowed to pursue her cause of action individually and assert all of the elements of loss of consortium. The elements of loss of society, affection, and sexual companionship are personal to her and quite apart from a similar claim of the husband. If the wife separately recovers for loss of consortium, including a loss of the services of her husband, he then would be barred from a recovery of this same item in his independent subsequent action." *Id.* at 581.

[10] For instance, if two parents were both injured in the same car accident, and they had nine children at the time of the accident who were not involved, 22 claims would be generated from the two physical injuries. Since each child would have a claim for each parent's consortium, 18 consortium claims would be generated by the children. The parents would have claims for each other's consortium and

granted the same rights as parents for consortium, then they should be bound by the same limitations.

*Theama* also depended on precedent from three other jurisdictions to support the cause of action. *See Weitl v. Moes*, 311 N.W.2d 259 (Iowa 1981); *Berger v. Weber*, 411 Mich. 1, 303 N.W.2d 424 (1981); and *Ferriter v. Daniel O'Connell's Sons, Inc.*, 381 Mass. 507, 413 N.E.2d 690 (1980). Since *Theama* was published, three other courts recognized the cause of action. *See Ueland v. General Metals Company*, 103 Wash. 2d 131, 691 P.2d 190 (1984); *Hay v. Medical Center of Vermont*, 145 Vt. 533, 496 A.2d 939 (1985); *Rosen v. Zorzos*, 449 So. 2d 359 (Fla. Dist. Ct. App. 1984). Of these six jurisdictions, two [subsequently] have totally overruled the child's cause of action for their negligently injured parents' consortium. *See Audubon-Exira Ready Mix, Inc. v. Illinois Central Gulf R.R. Co.*, 335 N.W.2d 148 (Iowa 1983)

---

for their own physical injuries. Under the rules of *Fitzgerald v. Meissner & Hicks, Inc.*, 38 Wis. 2d 571, 575, 157 N.W. 2d 595 (1968), (allowing independent spousal recovery for consortium if the physically injured spouse does not sue, a broadening of the *Moran* rule), and the majority opinion of this case, (allowing independent unjoined actions for a child's claim for a negligently injured parent's consortium), if the claims for physical injury were settled, any of the remaining 20 consortium claims could trigger a full trial on liability issues.

If there is a possibility of negligence by more than one defendant, these 20 consortium claims would be multiplied by the number of defendants. If there were five defendants, as in the current case, 100 claims for consortium would be generated. Any cross claims for contribution would add even more claims. All would arise from one incident. It makes settlement on a piecemeal basis prohibitive.

Under the current formulation, all claims against all possible tortfeasors would have to be settled to avoid a full trial on liability. *See generally,* Note, *Child May Recover for Loss of Parent's Society and Companionship*, 68 Marq. L. Rev. 174, 182 (1984).

*overruling Weitl v. Moes,* 311 N.W.2d 259 (Iowa 1981); *Rosen v. Zorzos,* 467 So. 2d 305 (Fla. 1985) *overruling Rosen v. Zorzos,* 449 So. 2d 359 (Fla. Dist. Ct. App. 1984). Of the four other jurisdictions retaining the child's cause of action for their negligently injured parent's consortium, two, the *Ueland* and *Hay* cases, require joinder of the child's claim to control multiple claims. In addition to the jurisdictions that *Theama* cited as rejecting such a cause of action, at least three other jurisdictions have considered and denied such a cause of action since *Theama* was published, expressing concerns about the multiplicity of claims. *Lewis v. Rowland,* 287 Ark. 474, 701 S.W.2d 122 (1985); *Huter by Huter v. Ekman,* 137 Ill. App. 3d 733, 484 N.E.2d 1224 (1985); *Sanders v. Mt. Sinai Hospital,* 21 Ohio App. 3d 249, 487 N.E.2d 588 (1985).

Section 803.03(2)(a), Stats., requires joinder of related claims, including loss of consortium claims, but only if those principal claims are actually brought. In the present case, the parents actually settled their claim and the children are proceeding against Holup independently. If Holup had not settled with the parents and the parents sued, he would have known three years from the date of the injury whether the children were going to sue him, because the children would have been required by sec. 803.03(2)(a)5 to join with the underlying claims of Mr. Bell. Under the present system of statutes of limitations, a child suing for loss of consortium has three years to bring his claim if his parent sues within those three years. Under sec. 803.03(2)(a), the child is a mandatory party to the action, and the child's claim would be dismissed if brought independently if his parent sued. However, if his parents do not sue, but settle or allow their underlying claim to be extinguished after

the three year statute of limitations passes, the child can sue two years after the age of majority, possibly 20 years after the injury to the parent. Section 893.16 (1983–84). This disparate treatment of claims subjects the settling tortfeasor to disparate statutes of limitations. Where the parent has allowed the underlying claim to lapse, the tortfeasor may not have investigated the underlying claim for possible defenses. If sued by a child independently 19 or 20 years later, the tortfeasor may be unable to perform such an investigation sufficient to mount a defense to the underlying claim, and therefore be subject to liability to the child.

It is also unclear whether sec. 803.03(2)(a), Stats., requires an independent action for a child's loss of a negligently injured parent's consortium to be joined with another independent action by other children. Although it is defined as derivative from the principle claim where the principle claim has not been adjudicated, a child's claim for loss of a negligently injured parent's consortium has no relationship with other such claims. Therefore, independent lawsuits could be brought against the tortfeasor years after the injury. The first suit would establish the liability of the tortfeasors by determining whether the physically injured party would have been able to recover for damages for the underlying injury and the damages for the first child to sue. Remaining children could then sue on the basis of the liability established. If any defendant attempted to dispute that liability, he would be estopped from denying the liability by the record of the first case. *See e.g.*, *Leimert v. McCann*, 79 Wis. 2d 289, 293, 255 N.W.2d 526 (1977), ("The doctrine of estoppel by record prevents a party from litigating again what was actually litigated or might have been litigated in a former

action.") Damages of any remaining children, however, could be at issue in every remaining suit, and it would be the option of that child (if of majority) or his guardian ad litem to independently litigate those damages.

All these considerations would have a chilling effect on settlements. Insurers and tortfeasors have no way of predicting what a verdict might be for consortium eighteen or nineteen years after the underlying injury occurred, and insurers will be unable to decide what premium to charge for such an exposure. It will take nineteen years from the date of *Theama* to determine what "experience" insurers have with loss of consortium claims to enable them to set a premium that accurately reflects the losses.

The majority recognized these concerns by making *Theama* prospective only. At 7. The amount of litigation generated might not be realized for years and extinguishment or limitation of the cause of actions for a child's loss of a negligently injured parent's consortium that already accrued would truly work an injustice.

Making joinder mandatory, as *Shockley* wisely did, would return predictability to the action and encourage settlements. Suits or settlements would have to be brought within the statute of limitations for the underlying claim of the parent, three years. Section 893.54(1), Stats. This would allow the legislature to study the effects of the cause of action, its costs and use, and respond appropriately over three years rather than nearly two decades.

We have previously stated as a standard that to be an exception to the prospective application of a new rule of the common law, the "but for" rule applies. That rule is that but for a chance yet determinative circumstance, the cases which seek the exception should have been or

would likely have been the cases that would have proved the rule. *Harmann,* 128 Wis. 2d at 386. *Theama* was already in the court of appeals when the trial court in this case favorably ruled for these plaintiffs and, therefore, the procedural position of the *Bell* case would not fit the standard.

The result of the majority making this case an exception to the *Theama* prospective application leaves litigants and attorneys in a quandry as to what we mean when we say a new cause of action in the common law will apply to the case in which it is promulgated and prospectively only as to all other cases. We, therefore, have, as a result of this case, no rule.

Accordingly, I dissent, and would affirm the court of appeals decision.

I am authorized to state that Mr. JUSTICE WILLIAM A. BABLITCH joins this dissenting opinion.