I am authorized to state that JUSTICES ABRAHAMSON and STEINMETZ join in this dissent.

■■■■■■

## IN the INTEREST OF J.V.R.: J.V.R., Appellant and Cross-Petitioner,

v.

## STATE of Wisconsin, Respondent-Petitioner.

Supreme Court

*No. 84–1855. Argued October 29, 1985.—Decided December 20, 1985.*

(Also reported in 378 N.W.2d 266.)

For the respondent-petitioner the cause was argued by *Sally L. Wellman,* assistant attorney general, with whom on the briefs was *Bronson C. La Follette,* attorney general.

For the appellant-cross-petitioner there was a brief by *Jay K. Nixon* and *Harvey, Goepel, Barta & Nixon,* Racine, and oral argument by *Jay K. Nixon.*

WILLIAM G. CALLOW, J. The state seeks review of an unpublished decision of the court of appeals reversing an order of the circuit court for Racine county, Judge Dennis J. Barry, waiving juvenile court jurisdiction. The dispositive issue on appeal is whether the waiver petition complied with sec. 48.18(2), Stats. We affirm the decision

of the court of appeals and hold that under sec. 48.18(2) the state must include in its waiver petition a brief statement of the facts upon which it will rely in seeking waiver.

On May 20, 1984, at 1 a.m., a police officer observed J.V.R. and three other juveniles tampering with cars in a parking lot in Racine. In his report the officer related seeing the juveniles in the vicinity of a dark green Buick. After seeing the squad car, the juveniles fled the scene. A foot chase ensued.

The police successfully apprehended two of the youths, G.M. and B.L., and found a watch and a pair of sunglasses in B.L.'s possession. The owner of the Buick reported that a pair of sunglasses and a watch were taken from the car. After being advised of their constitutional rights, both juveniles identified J.V.R. as one of the individuals who had eluded the police. G.M. stated that J.V.R. had suggested they search the cars. G.M. also stated that J.V.R. had entered one of the cars and had taken a pair of sunglasses and a watch which he gave to B.L. B.L.'s statement to the police substantiated G.M.'s story. The police later apprehended J.V.R.

On July 2, 1984, pursuant to sec. 48.255, Stats., the state filed a delinquency petition in the Racine county juvenile court alleging that J.V.R. had committed the offenses of theft, party to a crime, contrary to secs. 943.20(1)(a), 939.05(1), and 939.32. The delinquency petition detailed the facts of the charged offense and the sources of the information. The state also filed a waiver petition, pursuant to sec. 48.18, seeking to have J.V.R. tried as an adult.[1]

---

[1] Section 48.18(1), Stats., provides: "If a child is alleged to have violated a state criminal law on or after his or her 16th birthday, the child or district attorney may apply to the court to waive its jurisdiction under this chapter." J.V.R. allegedly committed the offense three months after his sixteenth birthday.

Section 48.18(2), Stats., requires that a "waiver hearing shall be brought on by filing a petition alleging delinquency drafted under s. 48.255 and a petition for waiver of jurisdiction *which shall contain a brief statement of the facts supporting the request for waiver.*" (Emphasis added.) In J.V.R.'s case the petition for waiver incorporated by reference the facts contained in the delinquency petition. The petition offered no other facts in support of waiver; it contained only a conclusive statement: "In the event of conviction the remedies available to the criminal court would be more effective under the circumstances of this case than those available to the juvenile court."

J.V.R. moved to dismiss the waiver petition, asserting that it did not comply with sec. 48.18(2), Stats., because it did not contain a sufficient statement of facts supporting the request for waiver. The juvenile court held a hearing on the motion on August 24, 1984. The court found that the language of sec. 48.18(2) did not concern the content of the petition but focused on the manner in which hearings were to be conducted. Although the court concluded the petition could have been more specific, it held that under existing case law, specifically *State ex rel. TDD v. Racine County Circuit Court,* 91 Wis. 2d 231, 280 N.W. 2d 264 (1979), the facts set forth in the petition were sufficient to satisfy the statute. Accordingly, the court denied J.V.R.'s motion to dismiss.

On September 6, 1984, the court held a waiver hearing. Consistent with the procedures outlined in *In Interest of T.R.B.,* 109 Wis. 2d 179, 185, 325 N.W. 2d 329 (1982), the court engaged in a two-step analysis during the waiver hearing. Initially, the court focused on the issue of prosecutive merit, hearing testimony from B.L. and G.M. on the events of May 20, 1984. After finding prosecutive merit, the court heard testimony from three additional witnesses on the question of waiver.

The state called John Merrill, an employee of the Juvenile Probation Unit of the Human Services Depart-

ment. Merrill had been J.V.R.'s case manager, and testified to J.V.R.'s prior record and treatment history, relying upon information from Human Services Department files.

On four occasions in 1981, J.V.R. was charged with crimes ranging from shoplifting, to theft, to carrying a concealed weapon. The juvenile court found him delinquent on two of these charges, initially ordering him to complete twenty hours of community service and later placing him under supervision for six months.

J.V.R. next appeared in court on June 7, 1983, at which time the juvenile court found him delinquent on charges of theft and carrying a concealed weapon. Again, the juvenile court placed him under supervision. It also ordered him to attend school on a full-time basis and complete thirty hours of community service work. Then, on September 13, 1983, the juvenile court found J.V.R. delinquent on charges of operating a vehicle without a driver's license and fleeing and eluding a traffic officer. The juvenile court transferred his custody to the State Department of Health and Social Services and committed him to Ethan Allen School for Boys for a period of six months.

Summarizing J.V.R.'s experience with the rehabilitation services, Merrill explained that, although J.V.R. occasionally benefited from the services, on the whole the services had not been successful in rehabilitating J.V.R. J.V.R. continued to display negative behavior; he acted up in school and sometimes became physically aggressive. Merrill acknowledged that he had not met with J.V.R. in the six months prior to the waiver hearing because he ceased to be J.V.R.'s case manager when J.V.R.'s commitment expired in March, 1984. Nonetheless, Merrill opined that the services available in the juvenile system would not be of benefit to J.V.R. absent a change in J.V.R.'s attitude. The state already had attempted out-of-home placement with little success. In Merrill's experience, residential placements were always more difficult

the second and third time than the first. He concluded that the only untried alternative available to the juvenile court would be forfeiture.[2]

Merrill also testified regarding the results of a psychological evaluation of J.V.R. which a psychologist from Racine Psychological Services had performed on August 29, 1983, prior to J.V.R.'s commitment to Ethan Allen. The evaluation revealed J.V.R. had a history of behavior problems stemming from an aggressive and rebellious orientation. It indicated J.V.R. was emotionally volatile and negativistic, and generally externalized blame for his unacceptable behavior. J.V.R. showed no awareness of or concern about problems in his behavior, no sensitivity to the danger in which he placed others, and no understanding of the need for self-change. The psychological report concluded that the most effective treatment alternative would be a residential facility in which J.V.R.'s behavior could be controlled.

Notably, the conclusive statement contained in the waiver petition did not give J.V.R. any notice of the evidence the state offered at the waiver hearing other than the evidence regarding the underlying charge. However, J.V.R. did call two witnesses on his behalf. First, he called his father. J.V.R.'s father testified that he had been separated from J.V.R.'s mother since 1977. He admitted that he had not played a significant role in J.V.R.'s upbringing prior to J.V.R.'s commitment to Ethan Allen, but stated that he has had much more contact with J.V.R. since J.V.R.'s release. He had been discussing with J.V.R.'s mother the possibility of reconciling their marriage. He believed that J.V.R.'s problems were attributable to his

---

[2] Section 48.34(8), Stats., provides as follows: "If the judge finds that no other court services or alternative services are needed or appropriate it may impose a maximum forfeiture of $50 based upon a determination that this disposition is in the best interest of the child and in aid of rehabilitation . . . ."

absence from the home and the types of kids with whom J.V.R. associated, and felt his presence in the home would help J.V.R.

Second, J.V.R. called David Goehner, a clinical social worker with Catholic Social Services who had been J.V.R.'s supervising officer prior to J.V.R.'s commitment to Ethan Allen. Goehner testified that the treatment most likely to be effective with J.V.R. would be residential placement. Goehner cautioned, however, that the success of any juvenile treatment would depend upon J.V.R.'s attitude.

Having heard the testimony of the witnesses and the arguments of counsel, the juvenile court made findings on each of the relevant factors contained in sec. 48.18(5), Stats., and granted the petition for waiver. Taking all the relevant factors into account, the court concluded that it would be in the best interests of both J.V.R. and the public to waive the case into adult court.

J.V.R. requested leave to appeal the waiver order, and the court granted the request. On appeal, J.V.R. contended the juvenile court erred in finding the waiver petition adequate. He argued that because the conclusive statement in the state's waiver petition failed to give him notice of the facts upon which the state intended to rely, the waiver petition did not satisfy sec. 48.18(2), Stats. The state countered that the waiver petition was adequate and conformed to the petition used in *State ex rel. TDD v. Racine County Circuit Court, supra.* The state maintained that, taken together, the delinquency and waiver petitions put the juvenile on notice that all of the facts and circumstances delineated in sec. 48.18(5), Stats., would be considered at the waiver hearing. The court of appeals, however, ruled that the waiver petition failed to provide J.V.R. with the notice required by sec. 48.18(2) because it did not identify the facts upon which the state would rely in seeking waiver. The court of appeals, therefore, reversed the waiver order. The state subsequently

filed a petition for review which this court granted on June 4, 1985.

The issue on appeal concerns the interpretation of sec. 48.18(2), Stats. Section 48.18(2) mandates that a petition for waiver of jurisdiction "shall contain a brief statement of the facts supporting the request for waiver." The state maintains that the "brief statement of the facts" refers to the facts underlying the charged offense rather than the facts supporting the waiver request. The state claims it fulfilled this statutory requirement because the delinquency petition recited the facts underlying the charge, and the waiver petition incorporated the facts in the delinquency petition. The state argues this adequately puts the juvenile on notice that all of the factors delineated in sec. 48.18(5), would be considered at the waiver hearing. J.V.R. contends that the phrase "brief statement of the facts supporting the request for waiver" requires the state to identify the facts it will rely upon to support waiver into adult court rather than the mere facts of the underlying charge. J.V.R. asserts that the waiver petition violated sec. 48.18(2) because it referred only to the facts of the underlying charge and did not state the additional facts upon which the state relied at the waiver hearing.

Questions of statutory interpretation are questions of law. When reviewing questions of law, this court need not give deference to the lower courts' reasoning. *Ball v. District No. 4, Area Board,* 117 Wis. 2d 529, 537, 345 N.W. 2d 389 (1984). The purpose of statutory interpretation is to ascertain and give effect to the legislature's intent. To determine legislative intent, the court must look to the language of the statute. If the statute's meaning is clear on its face, the court shall not look outside the statute to determine legislative intent. *Wisconsin Electric Power Co. v. Public Service Commission,* 110 Wis. 2d 530, 534, 329 N.W. 2d 178 (1983). If the statute is ambiguous, however,

 

the court may look to the scope, history, context, subject matter, and object of the statute to determine legislative intent. A statute is ambiguous if it can be understood in either of two or more senses by reasonably well-informed people. *In Interest of P.A.K.,* 119 Wis. 2d 871, 878–79, 350 N.W. 2d 677 (1984).

█

Section 48.18(2), Stats., is clear and unambiguous. It states that the waiver petition shall contain a "brief statement of the facts *supporting the request for waiver."* (Emphasis added.) This phrase clearly means the waiver petition must identify the facts upon which the state will rely in seeking to have the juvenile tried as an adult.[3] The petition cannot state merely the facts relating to the underlying charge if the state intends to rely upon additional facts at the waiver hearing. Because the waiver petition did not state any of the facts upon which the state relied in seeking waiver, other than those contained in the delinquency petition, and because this failure to provide notice adversely affected a substantial statutory right of the juvenile, we affirm the decision of the court of appeals.

Our decision today is consistent with our previous decisions in *In Interest of D.H.,* 76 Wis. 2d 286, 251 N.W. 2d 196 (1977), and *State ex rel. TDD v. Racine County Court, supra.* Much like the waiver petition in question here, the waiver petition we upheld in *D.H.* offered only a conclusive statement that " 'it would be contrary to the best in-

---

[3] The state would have us construe sec. 48.18(2), Stats., so that the waiver petition could merely reiterate the facts of the underlying offense. Under this construction of sec. 48.18(2), the phrase "a brief statement of the facts supporting the request for waiver" becomes superfluous. Section 48.18(2) mandates that the state file a delinquency petition, pursuant to sec. 48.255, Stats., in addition to a waiver petition. Under sec. 48.255, the state must detail in the delinquency petition the facts underlying the charged offense. The state's construction of the phrase "a brief statement of the facts supporting the request for waiver," therefore, merely duplicates what the statute already requires.

terests of the child or the public to dispose of the issues in the juvenile court.' " *D.H.*, 76 Wis. 2d at 298. The instant case can be distinguished from *D.H.* on two grounds, however. First, we did not need to consider sec. 48.18(2), Stats., in *D.H.* because our decision occurred prior to the legislature's promulgation of sec. 48.18(2). Second, in seeking to have D.H. waived out of juvenile court, the state relied upon only the facts relating to the underlying offense. We noted in *D.H.* that there may be "some circumstances [in which] notice of reasons for waiver going beyond the nature of the immediate crime and the general statement of the statutory grounds for waiver should be given as a matter of fairness." *D.H.*, 76 Wis. 2d at 298. By requiring the state to give notice of the facts upon which it will rely in seeking waiver, sec. 48.18(2), in essence, adopts this court's comment in *D.H.*

The waiver petition at issue in *TDD* contained the same conclusive statement as the petition in this case. The issue in *TDD*, however, did not concern the adequacy of the waiver petition. Rather, the issue in *TDD* concerned the need for an evidentiary hearing prior to the issuance of a waiver order. *TDD*, 91 Wis. 2d at 232–33. In upholding the waiver order, we did not assess the adequacy of the waiver petition. Further, the facts in *TDD*, like *D.H.*, are distinguishable from the facts present here because the state relied upon only the facts pertaining to the underlying offense in seeking waiver in *TDD*.

Section 48.18(5), Stats., contains numerous factors which guide the juvenile court when it exercises its discretion in making a waiver decision. This nonexhaustive list of factors is drawn largely from the United States Supreme Court's decision in *Kent v. United States,* 383 U.S. 541, 566–67 (1966). Section 48.18(2), operates to provide the juvenile with notice of the facts upon which the state will rely in seeking waiver so that the juvenile can focus his defense on the relevant factors from sec. 48.18(5). A waiver petition which merely refers to the factors con-

tained in sec. 48.18(5) will not suffice. The waiver petition must briefly state the facts the state will offer at the hearing.

At the waiver hearing in this case, the state brought forth testimony on several facts, in addition to the facts of the underlying offense, to support its request for waiver. The waiver petition, however, contianed only a reference to the facts of the underlying charge and a conclusive statement that the remedies available in criminal court would be more effective than the remedies available in juvenile court. The waiver petition did not give J.V.R. notice of the additional facts the state brought forth to support waiver. Because the waiver petition did not briefly state the additional facts upon which the state relied in seeking waiver as required by sec. 48.18(2), Stats., thereby affecting a substantial statutory right of the juvenile, we affirm the court of appeals' ruling that the petition did not conform to the dictates of the statute.

Retrospective application of a judicial holding is a question of policy, not constitutional law. *Kurtz v. City of Waukesha,* 91 Wis. 2d 103, 108, 280 N.W. 2d 757 (1979). This is the first opportunity this court has had to consider the requirements of sec. 48.18(2), Stats. Accordingly, this ruling shall have only prospective effect, except that this ruling shall apply to this case and to other cases which have not been finalized on the date of the release of this opinion if the juvenile properly objected to the form of the waiver petition at the time of the waiver hearing. It would be contrary to public policy to reopen completed cases for which direct review is no longer available. *See In re Termination of Parental Rights to M.A.M.,* 116 Wis. 2d 432, 442, 342 N.W. 2d 410 (1984).

We affirm the decision of the court of appeals in which it reversed the waiver order, and we remand the cause to the circuit court for further proceedings.

*By the Court.*—The decision of the court of appeals is affirmed.

LOUIS J. CECI, J. *(dissenting)*. Because I believe that the majority's opinion continues the trend toward an unnecessary and excessively technical reading of the juvenile code—all to the detriment of the entire juvenile justice system—I must dissent.

This court's refusal to affirm the trial court's proper waiver of J.V.R. into adult court sends another clear signal to the public and to those juveniles so disposed to taking advantage of the juvenile justice system that the system does not deal with juvenile offenders and the public justly, fairly, and with common sense.

This is a not-so-isolated situation where a juvenile is literally getting away with repeated criminal conduct. J.V.R., in the two years preceding the criminal activity now before the court, had been found delinquent for, among other things, theft, operating a motor vehicle without a license, fleeing and eluding an officer, and carrying a concealed weapon. He was repeatedly slapped on the wrist and was finally sent to the Ethan Allen School for help. Now he is back in the juvenile system. Truly, " 'the remedies available to the criminal court would be more effective under the circumstances of this case than those available to the juvenile court.' " ( Majority opinion at page 195; quoting from waiver petition.) The majority, however, determines that a substantial statutory right of the juvenile has been adversely affected. The upshot is that a juvenile in this situation will again receive only a slap on the wrist, the juvenile system will become more ineffective in dealing with juveniles who require adult-type sanctions, and the public will become increasingly disenchanted with the integrity of the juvenile justice system.

The juvenile system must be strong enough to deal effectively with those juveniles who strain the limits of the children's code. Waiving a child into adult court under the proper circumstances provides some of the necessary strength. The public should not have to tolerate

anything less from the juvenile system, which already bends over backwards to be patient with children found delinquent. Some children engage in more serious antisocial activity than the juvenile system is designed to cope with; those who do should be waived, under the proper circumstances, into adult court.

Moreover, J.V.R. failed to allege or demonstrate any actual prejudice at the waiver hearing. He was not taken by surprise by the state's evidence. He does not argue that evidence was hidden from him or his attorney. The delinquency adjudications listed above are a part of his juvenile record. Indeed, counsel's access to social records and other reports of a child is mandated by sec. 48.18(3), Stats.[1] Thus, J.V.R. had access to his juvenile record, which included his numerous delinquencies and the psychological evaluation introduced by the district attorney through John Merrill, who had been J.V.R.'s juvenile case manager. With no more than a cursory review of his record, J.V.R. and his counsel would have been fully apprised of the evidence in support of his waiver from juvenile court. The state introduced no evidence which was not a part of his juvenile file.

By concluding that J.V.R. had no notice of the grounds of the waiver petition, the court emasculates the intention of the juvenile code with respect to waiver. To affirm the decision of the court of appeals, absent a showing of actual prejudice, is to replace judicial discretion with a hypertechnical, formalistic analysis of the children's code. The majority's conclusion does a great disservice to a practical reading of the children's code and to the citizens of this state, who have an interest in being protected from antisocial behavior.

---

[1] Section 48.18(3), Stats., states in relevant part: "The child shall be represented by counsel at the waiver hearing. . . . Counsel for the child shall have access to the social records and other reports consistent with s. 48.293."

I also find fault in the failure of the majority opinion to express exactly what "substantial statutory right of the juvenile" (majority opinion at pages 200, 202) is affected by the alleged failure of the waiver petition to provide notice to the juvenile. Is the substantial statutory right that of notice itself? Or is there a right in addition to notice? The majority does not say.

I cannot join the majority because I believe the juvenile here had effective notice of the basis for the waiver petition. The juvenile code must not be interpreted so technically that we become blind to the pragmatics of the code. J.V.R. knew and had full access to his juvenile record; the record represents the only basis upon which the state relied to support its waiver petition. The majority's affirmation that J.V.R. required more notice than the waiver petition provided—notice which, in fact, J.V.R. already had—strikes a blow against a realistic interpretation of the children's code and marks another step toward total unbalance in our juvenile law.

