James SCHMIDT, Plaintiff-Appellant,

v.

WISCONSIN EMPLOYE TRUST FUNDS BOARD,
Defendant-Respondent-Petitioner.

Supreme Court

*No. 88–0246. Argued November 28, 1989.—Decided January 4,
1990.*

(Also reported in 449 N.W.2d 268.)

For the defendant-respondent-petitioner the cause was argued by *Warren M. Schmidt,* assistant attorney general, with whom on the briefs was *Donald J. Hanaway,* attorney general.

For the plaintiff-appellant there was a brief by *Simon M. Karter* and *Wyngaard & Wilson,* Madison and oral argument by *Mr. Karter.*

Amicus curiae brief was filed by *Richard V. Graylow* and *Lawton & Cates, S.C.,* Madison for The American Federation of State, County and Municipal Employees and The Professional Fire Fighters of Wisconsin.

STEINMETZ, J.   The issue before us is whether the court of appeals correctly interpreted and applied the language of sec. 42.245(1), Stats. 1965[1] to hold that the appellant, James Schmidt, is entitled to three years of creditable teaching service. The three years represent one-half of the six years of prior teaching service accumulated. At issue are the rights retained under the State Teachers Retirement System Fund for the period 1957 to 1963 after Schmidt withdrew his member deposits and signed a waiver of rights to state deposits which accumulated during those six years. We hold that the plain language of sec. 42.245(1) clearly supports the conclusion that Schmidt is entitled to "creditable service" credit for three years of the six years of teaching service performed by him prior to September 11, 1965. Therefore, we affirm the decision of the court of appeals which reversed the order of the circuit court, and we remand the matter to the Employe Trust Funds Board for proceedings consistent with this opinion.

Schmidt began teaching at a Wisconsin public school in 1957. His salary was subject to mandatory employer and employee contributions to the state teacher's retirement fund (fund). In 1957, the fund provided a "separate group" annuity plan and a new "combined group" annuity plan. Section 42.241(1), Stats.

---

[1]The relevant text is cited in full, *infra.* Unless otherwise noted, all statutes cited herein are from the 1965 compilation of ch. 42, Stats. Statutory language governing the combined and separate group plans went unchanged at this time. The only additions were the formula group plan statutes.

Schmidt was automatically made a member of the combined group pursuant to sec. 42.241(2)(b). The combined group offered a choice of two annuity plans, fixed and variable. Schmidt belonged to the fixed annuity plan governed by sec. 42.242. He stopped teaching in June, 1963, and applied at that time for separation benefits from the fund. Those benefits consisted of his contributions to the fund ("member deposits"), plus interest. Section 42.242(5).

Because he was a member of the combined group fixed annuity plan, sec. 42.242(5), Stats., required that Schmidt sign a "full and complete discharge and release of all right, interest or claim . . . to state deposit accumulations" in order to receive his member contribution plus interest as accrued between 1957 and 1963. On December 6, 1963, Schmidt signed such a release and received his full separation benefit. The full text of the waiver provision on the application stated:

> I hereby apply for the accumulation from my members deposits made while a member of the combined group based on teaching service performed after June 30, 1957, and agree that payment of said accumulation shall constitute a full and complete discharge and release of all right, interest or claim on my part to state deposit accumulations based on teaching service performed after June 30, 1957.

Schmidt returned to teaching in the Wisconsin public school system in 1964. His salary was again subject to mandatory member and employer contributions to the fund, and, again, he was a member of the combined group. On September 11, 1965, the fund offered a third basic annuity plan, the "formula group" plan, created and governed by secs. 42.244 and 42.245, Stats. Members of the combined and separate groups could elect mem-

bership in the formula group. Schmidt chose to become a formula group member.

The retirement benefit available under the formula group plan is determined in part by multiplying the participant's number of years of "creditable service" by the sum of a percentage of the employee's "final average compensation" and another factor not relevant to this review. Section 42.245(2)(b)2a, Stats. Thus, an employee's years of "creditable service" is an important factor in computing the size of the retirement benefit a participant will receive under the formula group plan.

Following the creation of the formula group annuity plan, the Department of Employe Trust Funds (department) began an audit of teacher accounts to establish which years of teaching constituted years of "creditable service" under the formula group plan. The department completed the audit in 1977. Subsequent to the audit, the annual statements of members' accounts were adjusted to reflect new computations of past service years to reflect the new "creditable service" standard. Schmidt's adjusted statement of account indicated six fewer years of service than had his pre-audit statements. The difference was attributed to his receipt of separation benefits for the years 1957 to 1963.

Procedurally, the department refused to give Schmidt "creditable service" credit for the six years in question, 1957 to 1963. Pursuant to sec. 40.03(1)(j), Stats. 1981, he appealed to the Employe Trust Funds Board (the Board). At a meeting held April 8, 1986, the Board denied Schmidt the relief sought through his appeal based on language in sec. 42.243(5), although the Board used the language of sec. 42.242(5), the relevant combined group waiver statute. Subsequent to this first appeal, Schmidt hired an attorney. The attorney wrote the department requesting reconsideration of its deci-

sion and reinstatement of three of the six years pursuant to sec. 42.245(1)(c). The Board denied the request for reconsideration without comment on sec. 42.245(1)(c).

Schmidt then sought and was granted certiorari review in the circuit court of the Board's decision under sec. 40.08(12), Stats. His petition for certiorari alleged that the Board's refusal to grant him "creditable service" credit for three of the six years violated sec. 42.245(1)(c) and was arbitrary, oppressive and without foundation in law. In an order and memorandum decision dated November 6, 1987, the circuit court for Dane county, Judge William D. Byrne, affirmed the order of the Board. The circuit court's rationale held that when Schmidt signed the waiver of state deposit accumulations and received his separation benefit for teaching service from 1957 to 1963, under the plain language of sec. 42.245(1)(c), he surrendered the right to have any credit later reinstated for that period.

Schmidt then appealed to the court of appeals which reversed the circuit court.[2] The court of appeals held that under sec. 42.245(1)(c), Stats., Schmidt was entitled to three years of creditable service for the years 1957 to 1963. The court of appeals remanded the matter to the Board for purposes of granting the creditable service credits. The Board petitioned this court for review pursuant to sec. 808.10 (1979), and we granted the petition.

██

On certiorari, courts review an agency's decision by determining whether the agency kept within its jurisdiction, acted according to law, acted arbitrarily, and made, under the evidence presented, a reasonable order or determination upon the issue in question. *St. ex rel.*

---

[2]*Schmidt v. Wisconsin Employe Trust,* 148 Wis. 2d 844, 436 N.W.2d 918 (Ct. App. 1989).

*Brookside v. Jefferson Bd.*, 131 Wis. 2d 101, 119–20, 388 N.W.2d 593 (1986).

The facts in this case are undisputed, and the issue before us requires us to interpret statutory language. The meaning of a statute is a question of law which we review without deference to the lower courts. *In Interest of J.V.R.*, 127 Wis. 2d 192, 199, 378 N.W.2d 266 (1985). On any question of statutory construction the initial inquiry is to the plain meaning of the statute. If the statute is unambiguous, resort to judicial rules of interpretation and construction is not permitted, and the words of the statute must be given their obvious and intended meaning. *State Historical Society v. Maple Bluff,* 112 Wis. 2d 246, 252–53, 332 N.W.2d 792 (1983).

Although we review statutory construction de novo, great weight is ordinarily accorded to the reasonable construction and interpretation of a statute by the administrative agency charged with the responsibility of its application. *Pigeon v. ILHR Department,* 109 Wis. 2d 519, 525, 326 N.W.2d 752 (1982). However, Schmidt argued to the court of appeals, and the record so reflects, that the Board did not expressly base its determination to deny Schmidt's appeal on the language of sec. 42.245(1), Stats. Instead the Board's decision expressly mentioned only sec. 42.243(5), and recited the express language of sec. 42.242(5). The Board argued that Schmidt did not raise a sec. 42.245(1) issue until reaching the circuit court. Rather than reverse and remand the case to the Board for its interpretation of sec. 42.245(1), the court of appeals took the case in the interest of judicial economy citing *Wirth v. Ehly,* 93 Wis. 2d 433, 444, 287 N.W.2d 140, 146 (1980) as its authority. *Schmidt,* 148 Wis. 2d at 849. We choose to do the same.

41

Section 42.245(1)(a), Stats. 1965 in relevant part provides:

> **42.245 Benefits under the formula group.** This section shall apply only to members of the formula group . . ..
>
> (1) CREDITABLE SERVICE (a) Creditable service shall be expressed in years and such fractions thereof as the board determines. The creditable service of each member any time prior to July 1, 1966, shall be the number of years of service as a teacher in Wisconsin teaching (including prior service) theretofore creditable to him pursuant to the applicable statutes and rules, . . ..

We find this language to be clear on its face in that it provides the standard by which creditable service is to be determined. Creditable service for years prior to July 1, 1966, is determined by looking at statutes and rules applicable to the member at that time to determine whether the number of years of service as a teacher in Wisconsin teaching that have accrued are "theretofore creditable" to the member under the new formula group system.

Prior to July 1, 1966, a "year of teaching experience" was defined as "a fiscal year during which the teacher was employed as a teacher not less than a full school year." Section 42.20(16), Stats. Pursuant to sec. 42.40(2), a teacher in this state who was a member of the combined group was required to deposit 4-½ percent of "all compensation received for teaching service performed by such teacher" into the retirement deposit fund. If the teacher made the required deposit when due for each year of service as a teacher, then the corollary to sec. TR 4.01, Wis. Admin. Code, provided that a year of teaching experience would be credited to that teacher within the retirement system.

Wis. Admin. Code sec. TR 4.01 (Sept. 1964) provides:

> In cases in which it is found that required deposits have not been made when due, credit for years of teaching experience cannot be counted as within the system for the time during which said required deposits were not made, unless and until an amount equal to the required deposits, plus interest, which would have been accumulated had the required deposits been made at the proper time, has been paid into the fund.

The Board argues that the penalty found in this administrative rule is similar to the penalty situation before us because Schmidt's withdrawal of his member's deposits and his signing of the required waiver act to deny him interest in any teaching service accumulated when the required deposits are no longer in the fund. We disagree with this analogy. Section TR 4.01 clearly provides only the penalty for failure to make required deposits when due.

It is undisputed that Schmidt complied with the deposit requirements in each of the six years, 1957 to 1963, in question. Prior to June, 1963, then, before he stopped teaching in a Wisconsin public school and subsequently applied for his separation benefit, Schmidt had six years of teaching service credited to him within the retirement system.

The question then becomes whether these years are "theretofore creditable" so as to constitute creditable service within the formula group system. We are instructed in sec. 42.245(1)(a), Stats., to answer this question under these facts through application of the applicable statutes and rules. Two avenues of study are available. The first reviews whether any of the applicable statutes or rules expressly granted creditable service for

years of teaching service prior to July 1, 1966. We agree with the Board that no such statutes or rules existed nor could they have existed because the term "creditable service" was created specifically for formula group computations. The relevant language of sec. 42.245(1)(a) itself indicates that "years of teaching service" and "creditable service" are not necessarily synonymous.

The second avenue of review studies whether the language of any applicable statutes or rules creates a factor which would cause the years of teaching service to be lost under sec. 42.245(1)(a), Stats., for purposes of determining creditable service. Here, the parties disagree on the proper interpretation of language found in sec. 42.242(5) which governed Schmidt's ability to withdraw his combined group member deposits in 1963. The full text of sec. 42.242(5) provides:

> (5) SEPARATION BENEFITS. Any member who has ceased to be employed as a teacher in the public schools, state colleges or university in this state, and is not on leave of absence from a teaching position in the public schools, state colleges or university in this state may be paid the accumulation from the member's deposits made while a member of the combined group based on teaching service performed after June 30, 1957, on filing with the board before the 50th birthday anniversary of such member a written request therefor and a full and complete discharge and release of all right, interest or claim on the part of such member to state deposit accumulations based on teaching service performed after June 30, 1957. Withdrawal of accumulations from member's deposits made before said member became a member of the combined group shall be governed by s. 42.49.

The conflict centers upon the significance of "state deposit accumulations" in the waiver language "full and complete discharge and release of all right, interest or claim on the part of such member to state deposit accumulations . . .."

The Board argues that the last sentence of sec. 42.242(5), Stats., expressly affects the meaning of the combined group waiver of state deposit accumulations. The Board claims that this sentence acts to place the combined group member in the same position as a separate group member who signs a waiver agreeing to "a full and complete discharge and release of all right, interest or claim on the part of such member under the state teachers retirement law" pursuant to sec. 42.49(14) in order to receive immediate payment of his or her member deposits, plus interest. The Board asserts that the equal effect of both waivers is to remove all rights—including periods of service—from the signer's retirement system record.

The Board denied Schmidt's appeal based upon its interpretation of sec. 42.242(5), Stats. We review the construction of the sec. 42.242(5) waiver de novo. However, as stated *infra,* we recognize that the construction and reasonable interpretation of a statute by the administrative agency charged with applying the law is ordinarily entitled to great weight. *Pigeon,* 109 Wis. 2d 519, 525.

We will not, however, grant deference in this case to the Board's interpretation because we find it unreasonable. We hold that the Board erred in equating the plain meaning of "state deposit accumulations" with the terms "years of teaching service" and "creditable service."

It is reasonable to conclude that the broad language of the waiver signed by a separate group member under sec. 42.49(14), Stats., results in loss of years of service

such that there is no basis upon which to find any service that is "theretofore creditable" under sec. 42.245(1)(a). However, this is not the case under the clear, narrow language of the combined group waiver. Here, the terms "years of teaching service," and "creditable service" become synonymous as applied to ex-combined group members and are concerned only with time. In contrast, the term "state deposit accumulations," defined as "the deposit made by the state in the retirement deposit fund on behalf of any member," is clearly concerned only with money. Section 42.20(1)(d).

Thus, under the clear, plain language of sec. 42.242(5), Stats., we hold that Schmidt only waived his right to money which accumulated in his retirement fund through state deposits, nothing else. His years of service remained on his record, no other applicable statutes or rules act to expunge those years from his record, those years are "theretofore creditable," and, by definition, they therefore constitute creditable service under sec. 42.245(1)(a).

We next turn to sec. 42.245(1)(c), Stats., to determine specifically what effect the withdrawal might have on Schmidt's six years of creditable service for purposes of formula group computations. Section 42.245(1)(c) provides that:

> (c) Creditable service for Wisconsin teaching prior to September 11, 1965 shall be reduced by one-half of any period included therein with respect to which the required deposits of a member have been withdrawn, unless repayment of any such withdrawal has been made prior to July 1, 1966, pursuant to any applicable law. Nothing in this paragraph shall be construed to reinstate any rights waived in connec-

tion with the payment of a withdrawal or separation benefit.

We hold that by its plain language, sec. 42.245(1)(c), Stats., reduces by one-half any accrued years of creditable service granted under sec. 42.245(1)(a) for which required deposits of a member are withdrawn. The only exception to this rule applies to those members who, prior to July 1, 1966, made repayment to the system of member deposits withdrawn. Since combined group members could not make repayment at that time, Schmidt's six years of creditable service prior to September 11, 1965, are reduced by one-half for purposes of the formula computation. These three years will then be added to those years that have accrued since Schmidt rejoined the system. The plain language of the last sentence of sec. 42.245(1)(c) indicates further that Schmidt is only granted three years of time for purposes of his formula benefit computation. The state deposits forfeited upon withdrawal of his separation benefit will not be reinstated to augment the monetary interest he has accrued since rejoining the system in 1964.

We find highly persuasive support for our plain meaning interpretations within the text of an informative pamphlet which was designed to explain the formula group plan. The pamphlet was written by the retirement system and distributed to members of both the combined and separate groups in January, 1966, pursuant to sec. 42.244(2), Stats.

Similar to our interpretation, the pamphlet defines creditable service as "teaching service performed for which required deposits are made to the State Teachers Retirement System . . .. Service on [or before] June 30,

1966, will be counted in full years."[3] The pamphlet also explains the effects of withdrawal on a member's creditable service computation in accord with our plain language interpretation.

> A member who withdrew required deposits will receive creditable service for one-half the period of service for which the withdrawal was made. Members of the separate group may restore creditable service if withdrawals are repaid before the member elects to become a member of the formula group. Members of the combined group may not restore full creditable service by repayment of withdrawn required deposits.[4]

Finally, instructions to a sample chart designed to aid members in determining their approximate possible formula group benefits instructed them that "Wisconsin teaching experience is reduced by one-half for any service for which withdrawal was made by the member."[5]

In 1966, the membership at that time was presented with a one-time option to make a change in retirement plans. The retirement system, through its 1966 pamphlet, attempted to inform members as to the plain import of the formula plan changes and the effects an acceptance of these changes would have on their future benefits. To go back now, well after the fact, and change the plain meaning of statutory language so it will com-

---

[3]Wisconsin State Teachers Retirement System, *Information Comparing Required Deposits, Benefits and other features applicable to members of the Formula Group, Combined Group and the Separate Group,* sec. 42.244(2), Wisconsin Statutes 16 (Jan. 1966) (hereinafter pamphlet).

[4]Pamphlet, *supra* n. 3, at 17.

[5]Pamphlet, *supra* n. 3, at 23.

port with an overly complicated and self-serving interpretation would not be equitable.

We hold that sec. 42.245(1)(a), Stats., determines and grants creditable service to pre-July 1, 1966, combined group members. The only possible restriction to this grant, found in sec. 42.242(5), does not affect a combined group member's creditable service grant because the separation benefit waiver is a waiver of money only and does not constitute a waiver of years of teaching service. We also hold that sec. 42.245(1)(c) acts to reduce by one-half the creditable service granted to combined group members who took withdrawals of their member deposits. For the combined group members, sec. 42.245(1)(c) only reduces creditable service and does not reinstate any rights to state money forfeited via the sec. 42.242(5) written waiver.

*By the Court.*—The decision of the court of appeals is affirmed.

DAY and ABRAHAMSON, JJ., took no part.