Joyce BENSON, Arthur Budzak, Connie Cotter, Donald Duppler, Dave E. Genzmer, Paul Hallingstad, Mary Ann Kellman, Keith Larson, Helen Lawinger, Barbara J. Marten, Susan Mc Cord-Lehman, Yvonne R. Meyer, Rolf Mjaanes, Paul E. Olson, Arless Randall, Marjorie Reek, Delores Rinehart, Carla D. Wuebben, and the Class of Persons Similarly Situated, Plaintiffs-Appellants,

v.

Gary I. GATES, the Wisconsin Employe Trust Funds Board, and the Department of Employe Trust Funds, Defendants-Respondents.

Court of Appeals

*No. 92–3225. Oral argument May 9, 1994.—Decided October 20, 1994.*

(Also reported in 525 N.W.2d 278.)

389

For the plaintiffs-appellants the cause was sub-. mitted on the briefs of *Simon M. Karter* of *Wendel & Center* of Madison, and orally argued by *Simon M. Karter*.

For the defendants-respondents the cause was submitted on the brief of *James E. Doyle*, attorney general, and *Warren M. Schmidt*, assistant attorney general, and orally argued by *Warren M. Schmidt*.

Before Eich, C.J., Sundby and Anderson, JJ.

SUNDBY, J.   Plaintiffs-Appellants are active or retired Wisconsin public school teachers who seek "creditable service" under § 42.245(1), STATS., 1965, for Wisconsin teaching prior to September 11, 1965. Respondents are the Department of Employe Trust Funds, the Employe Trust Funds Board, and the secretary of the Department.[1] The teachers are similarly

---

[1] In this opinion, "the teachers" includes the named plaintiffs and the members of the class of teachers certified by the trial court. It does not include teachers who dispute the Depart-

situated to the successful plaintiff in *Schmidt v. Wisconsin Employe Trust Funds Board*, 153 Wis. 2d 35, 449 N.W.2d 268 (1990), with one important exception: if the Board's construction of § 40.08(10), STATS.,[2] is correct, the teachers' claims are time-barred. The teachers seek declaratory, mandamus and other relief to have the Department and the Board grant them service credits under § 42.245(1), irrespective of § 40.08(10).

The trial court dismissed the teachers' action because several of them failed to resort to the Department and the Board before they began this action, and others failed to exhaust administrative remedies they had initiated under § 40.03(1)(j), STATS.

We conclude that WIS. ADM. CODE § ETF 11.08(2)(b)3 which requires that the hearing examiner dismiss any appeal time-barred under § 40.08(10), STATS., makes prior resort to the Department and exhaustion of the teachers' administrative remedies futile. We further conclude that the period of limitation under § 40.08(10) within which errors in computing teachers' service credits may be corrected begins to run when the Department determines a participant's bene-

---

ment's determination of interest on service credits granted them. "Board" may include the Department and the secretary of the Department.

[2] Section 40.08(10), STATS., provides:

> Service credits granted and contribution, premium and benefit payments made under this chapter are not subject to correction unless correction is requested or made prior to the end of 7 full calendar years after the date of the alleged error or January 1, 1987, whichever is later, unless the alleged error is the result of fraud or unless another limitation is specifically provided by statute. This subsection does not prohibit correction of purely clerical errors in reporting or recording contributions, service and earnings.

fits upon retirement. We reject the Board's alternative defenses, reverse the order dismissing the teachers' action, and remand this cause to the trial court to direct the Department and the Board to determine and grant the teachers teaching service credits to which they are entitled under this opinion. We affirm that part of the trial court's order which dismissed the interest claims of those teachers who the Department has previously granted teaching service credits.

James Schmidt, the plaintiff in *Schmidt v. Wisconsin Employe Trust Funds Board*, began teaching at a Wisconsin public school in 1957 and left teaching in 1963.[3]

---

[3] The following facts as to Schmidt's teaching record and retirement benefits eligibility are taken from the Board's brief in *Schmidt*. APPENDICES AND BRIEFS, 153 Wis.(2d) 1-50, pp. 3-5, Wis. State Law Library.

As a public school teacher, [Schmidt] was automatically included in the "combined" (with social security) group of the State Teachers Retirement System (STRS). Sec. 42.241(2)(b), Stats. (1957). After terminating his employment as a Wisconsin public school teacher in 1963, he applied for a separation benefit, consisting of his "member's deposits" plus accrued interest[1] under sec. 42.242(5), Stats. (1963). In order to receive his *member's deposits*, he was required by sec. 42.242(5), Stats. (1963) to sign "a full and complete discharge and release of all right, interest or claim on the part of such member to *state deposit accumulations*." He signed such a statement and received his member's deposits plus interest.

Mr. Schmidt returned to Wisconsin teaching in 1964 and was again automatically a combined group STRS member. Sec. 42.241(2), Stats. (1963). Thereafter, on September 11, 1965, the "formula group" portion of the STRS was created. Sec. 42.244, Stats. (1965). He elected to be a member of the formula group. The retirement benefit available under the "formula group" then was determined by

---

[1] Combined group teachers had required "member's deposits" of 4½% of salary deducted from each payroll and transmitted to the STRS. Secs. 42.40(2) and 42.41, Stats. (1963). Comparable amounts in the form of "state deposits" were credited by the State to the STRS on behalf of each teacher. Sec. 42.45(1), Stats. (1963). A combined group teacher at retirement was entitled to a money purchase annuity based on both "member's required deposits" and "state deposits."

multiplying "final average compensation"[2] times a formula factor times the years of creditable service. Sec. 42.245(1) and (2), Stats. (1965). Years of creditable service thus became part of the primary method for determining the amount of STRS retirement benefit. This contrasted with the benefit determination method under the preceding "separate group" (without social security) and "combined group" (with social security) wherein the benefit was determined on a money purchase basis from the accumulations from "member's" and "state" deposits. *See* secs. 42.242(1) and 42.49(2) and (3), Stats. (1963).[3]

The STRS submitted annual statements of account to its participants which contained a statement of "years of Wisconsin teaching service." Following the creation of the formula plan in 1965, the Department of Employe Trust Funds began an audit of all 70,000 teacher accounts to establish which "years of Wisconsin teaching" constituted years of "creditable service" under the formula plan. When, in 1977, the Department completed this audit, the annual statements of account were corrected to reflect years of "creditable service." Mr. Schmidt's statement of account for 1977 and thereafter indicated six years less service than his previous statements due to his receipt of a separation benefit for the years 1957–63.

---

[2] "Final average compensation" was . . . an average of the highest five years of compensation. Sec. 42.20(17)(a), Stats. (1965).

[3] This new formula plan included alternative money purchase annuity guarantees to insure that participants transferring from the combined or separate groups would not receive a smaller benefit due to such transfer. Sec. 42.245(2)(c) and (d), Stats. (1965).

Mr. Schmidt appealed the Department's determination to deny him creditable service for the 1957–63 years to the ETFB [Employe Trust Funds Board] under sec. 40.03(1)(j), Stats.[4]

The Board concedes that the teachers present employment and retirement plan participation which, like Schmidt, entitle them to teaching service credits under § 42.245(1), STATS., 1965. However, unlike Schmidt, the teachers did not apply for such credits within seven years after the Department's "alleged error" in calculating their credits, or by January 1, 1987. The Board claims that the teachers should have known the Department's position when their "Years of Wisconsin Teaching Service" shown on their annual account statements changed after the Department completed its survey. Schmidt's annual statement received in 1977 (for 1976) showed eighteen years of Wisconsin teaching service, and his 1978 statement (for 1977) showed thirteen years of service.

After the *Schmidt* decision, some of the teachers inquired of the Department as to the effect of the decision on their right to teaching service credits. The Department informed them that *Schmidt* affected only the plaintiff therein and, in any event, their claims were time-barred by § 40.08(10), STATS.

We first examine the statute upon which the teachers base their claims.

Section 42.245(1), STATS., 1965, provided:

(a) Creditable service shall be expressed in years and such fractions thereof as the board determines. The creditable service of each member any time prior to July 1, 1966, shall be the number of years of service as a teacher in Wisconsin teaching

---

[4] Citations to the record omitted.

(including prior service) theretofore creditable to him pursuant to the applicable statutes and rules
. . . .

. . . .
(c)   Creditable service for Wisconsin teaching prior to September 11, 1965[,] shall be reduced by one-half of any period included therein with respect to which the required deposits of a member have been withdrawn, unless repayment of any such withdrawal has been made prior to July 1, 1966, pursuant to any applicable law. Nothing in this paragraph shall be construed to reinstate any rights waived in connection with the payment of a withdrawal or separation benefit.

For purposes of its motion to dismiss, the Board accepts that the teachers would be eligible for "creditable service" under § 42.245(1), STATS., 1965, except for the time-bar of § 40.08(10), STATS. In this action, the teachers seek to review the Department's and the Board's determination that § 40.08(10) bars their claims. However, the trial court concluded that the teachers must first resort to the agencies, and, if dissatisfied, to the courts by certiorari under § 40.08(12), STATS.

The teachers argue that the doctrines of primary resort and exhaustion of administrative remedies do not apply because the Department and the Board by administrative rule have made those remedies futile. We agree.

Section 40.03(1)(j), STATS., provides for an appeal from a determination of the Department to the Board; § 40.08(12), STATS., provides for certiorari review of a decision of the Board.

Where a statute sets forth a procedure for review of an administrative decision, such remedy

is exclusive, unless the remedy is inadequate. *Nodell Inv. Corp. v. Glendale*, 78 Wis. 2d 416, 422, 254 N.W.2d 310, 314 (1977). This requirement is sometimes termed the exhaustion of remedies doctrine and sometimes the primary jurisdiction doctrine. Here, the exhaustion of remedies doctrine applies rather than the primary jurisdiction doctrine because the administrative process began when the County addressed the classification of its jailers under § 40.02(48)(a), Stats. *See Nodell*, 78 Wis. 2d at 427 n.13, 254 N.W.2d at 316 n.13 (if administrative procedure has begun, the primary jurisdiction rule does not apply).

The premise of the . . . rule is that the administrative remedy: (1) is available to the party on his or her initiative, (2) is relatively rapid, and (3) will protect the party's claim of right. *Nodell*, 78 Wis. 2d at 424, 254 N.W.2d at 315. . . .

The exhaustion rule is a doctrine of judicial restraint which the legislature and the courts have evolved in drawing the boundary line between administrative and judicial spheres of activity. *Castelaz v. Milwaukee*, 94 Wis. 2d 513, 532, 289 N.W.2d 259, 268 (1980) (quoting *Nodell*, 78 Wis. 2d at 424, 254 N.W.2d at 315). . . . The exhaustion doctrine is premised on the notions that the expertise that comes with experience, and the fact-finding facility that comes with flexible procedures, enables the administrative agency to perform a valuable public function. *Wisconsin Collectors Ass'n v. Thorp Finance Corp.*, 32 Wis. 2d 36, 44, 145 N.W.2d 33, 36 (1966). While *Wisconsin Collectors* discussed the primary jurisdiction rule, we noted in *Village of Thiensville v. DNR*, 130 Wis. 2d 276, 282 n.2, 386 N.W.2d 519, 522 n.2 (Ct. App. 1986), that the doctrines of exhaustion of remedies and primary jurisdiction have developed into complementary parts of a general principle.

*County of La Crosse v. WERC*, 170 Wis. 2d 155, 175-77, 488 N.W.2d 94, 102 (Ct. App. 1992), *rev'd on other grounds*, 180 Wis. 2d 100, 508 N.W.2d 9 (1993).

The teachers argue that the principles which underpin the doctrine of judicial restraint—agency expertise and fact-finding facility—do not support primary resort to the Department and Board, or exhaustion of remedies, because the Department and the Board have already determined that they may not grant teaching service credits under § 42.245(1), STATS., 1965, to teachers who did not and cannot present their claims within the period prescribed by § 40.08(10), STATS. Again, we agree.

After *Schmidt* was decided, the chair of the Board and the chair of the Teachers Retirement Board inquired of the Attorney General as to the power of the boards to overrule or ameliorate determinations of the Department. One of the questions the chairs asked the Attorney General was plainly precipitated by *Schmidt* and inquiries the Department was receiving from teachers entitled to service credits under § 42.245(1), STATS., 1965. The question was: "When the . . . Board believes that the facts of a case are consistent with a previous case which has been adjudicated by a court, may the Board decide to apply the same judicial doctrines as applied by the court in such earlier case (e.g. equitable estoppel)?" 79 Op. Att'y Gen. 139, 144 (1990). In *Schmidt*, the court noted that the teachers' retirement system had issued a pamphlet in 1966 which informed members that additional retirement benefits were available under § 42.245(1), STATS., 1965, to eligible plan participants. 153 Wis. 2d at 47-48, 449 N.W.2d at 273. The court said: "To go back now, well after the fact, and change the plain meaning of statutory language so it will comport with an overly complicated and

self-serving interpretation *would not be equitable*." *Id.*
at 48-49, 449 N.W.2d at 273 (emphasis added).

The Attorney General opined that equitable estoppel "is rarely applied to action or inaction by the government. . . . Without additional facts, it is very difficult to conclude that the ETF Board's limited equity powers under section 40.03(1)(a)[, STATS.,] would permit the application of this doctrine to situations under section 40.03(1)(a)." 79 Op. Att'y Gen. at 145-46. The Attorney General further opined that the secretary of the Department did not have power to correct an administrative error unless expressly granted such power by the legislature. *Id.* at 148.

With the Attorney General's opinion as its guide, the Department embarked on rulemaking. It adopted WIS. ADM. CODE § ETF 11.03(1)(a) which provides:

> An appeal seeking correction of an alleged error with respect to service credits or contribution, premium or benefit payments . is barred unless commenced within 7 years after the date of the alleged error . . . . Where an alleged error has been incorporated in department records and relied upon in subsequent administration of ch. 40, Stats., benefits, the date of the alleged error for the purposes of this section and s. 40.08(10), Stats., is the earliest date on which the aggrieved person discovered, or should reasonably have discovered, the alleged error.

This rule could require fact-finding by the Department to determine when the plan participant discovered, or should reasonably have discovered, the Department's error. However, the Department and the Board have already determined that an error involving creditable service for a given year occurs on the date of the annual statement to the participant which shows

the error, not a subsequent date on which the alleged error is used to calculate retirement benefits or repurchase forfeited service. In a note to § ETF 11.03(1)(a), the Department gives the following example:

> Example: If an alleged error involves creditable service for a given year, and the amount of service credited was first reported to the participant on an annual statement the following year, the date of the alleged error is the date of the report to the participant, not a subsequent date on which the alleged error in creditable service is used to calculate retirement benefits or repurchase of forfeited service.

Plainly, the Department intended by this example to inform teachers who might seek teaching service credits under *Schmidt* as to its position.

We next consider whether we should require the teachers to first seek relief from the Department or Board. WISCONSIN ADM. CODE § ETF 11.08(1) provides that the hearing examiner's order dismissing an appeal shall be the final decision of the Board. Subsection (2) provides:

> The hearing examiner shall prepare and issue a dismissal, in the form and manner required by this chapter for a final decision, under the following circumstances:
>
> . . . .
>
> (b) If the examiner determines that the appeal is wholly or partially time-barred for one or more of the following reasons:
>
> . . . .
>
> 3. The appeal concerns a request to correct an alleged error with respect to service credits . . . and the request was made more than 7 full calendar years after the date of the alleged error or beyond another applicable limitation specifically provided

by statute. If the alleged error is the result of fraud the applicable limitation is instead 6 years from the date the aggrieved person discovered the facts constituting the fraud. Any portion of the appeal not time-barred may proceed.

Thus, it is futile for participants situated as are the teachers to pursue an administrative remedy before the Department or the Board. The only fact conceivably in dispute—when each participant received notice of the years of teaching service determined by the Department—is not disputed. The goals of primary resort and exhaustion of remedies—agency expertise and fact-finding facility—are therefore not served by requiring the teachers to pursue their administrative remedies before the Department and the Board.

The application of the statute and administrative rule to the teachers is a question of law which ultimately we would decide without deference to the Department, the Board, or the circuit court. Nothing would be gained by relegating the teachers to the Department and the Board. "Our court and federal and state courts have been willing to assume jurisdiction of a case, notwithstanding a party's failure to exhaust administrative remedies, where the court finds that the reasons supporting the exhaustion rule are lacking." *Nodell*, 78 Wis. 2d at 425-26, 254 N.W.2d at 316. One commentator has said that "[c]onsidering the doctrines of prior resort and of exhaustion together, the net result is in effect that the administrative agency is entitled to the first and the next-to-the-last word. It must be given an opportunity to speak first . . . ." 2 FRANK E. COOPER, STATE ADMINISTRATIVE LAW 572 (1965), *quoted in Nodell*, 78 Wis. 2d at 427 n.13, 254 N.W.2d at 317 n.13.

Here, the Department and the Board have had the first and the next-to-the-last word. "The last word is the court's, on judicial review." *Id.* We will defer to the agency when its first and next-to-the-last word will assist the court in stating the last word. Here, the Department and the Board have decided that the teachers' claims are time-barred. The Attorney General has told the Department and the Board that they have no equitable power to grant the teachers relief from the time-bar erected by § 40.08(10), STATS. It is appropriate therefore that we have the last word.

■

We turn, therefore, to examine how § 40.08(10), STATS., applies to the teachers. The facts necessary to that examination are undisputed. The construction of the statute is, therefore, a question of law which we decide without deference to the agency or circuit court. *Manor v. Hanson*, 123 Wis. 2d 524, 533, 368 N.W.2d 41, 45 (1985).

The teachers' entitlement to creditable service for one-half of their period of service prior to separation arose under § 42.245(1)(c), STATS., 1965. At that time, the general statute of limitations applied to a participant's claim to teaching service credits. Section 40.08(10), STATS., was created in 1981 when the Wisconsin Retirement Fund, the State Teachers Retirement System, and the Milwaukee Teachers Retirement Fund were merged into one public employee retirement system known as the Wisconsin Retirement System. The merger was decreed by the legislature by Laws of 1975, Ch. 280, § 1. Section 2 of that law directed the Employe Trust Funds Board to prepare and submit to the 1977 legislature a bill to reconcile the statutes with the merger policy declared in ch. 280. The implementation did not take effect until

January 1, 1982. Laws of 1981, ch. 96, § 68. Section 31 of that law repealed ch. 41 (Public Employes Retirement (Except Teachers)) and § 33 repealed ch. 42 (Teachers Retirement).

Although § 42.245(1), STATS., 1965, was repealed, participants' rights under the State Teachers Retirement System were preserved by § 40.19(1), STATS., which reads:

> Rights exercised and benefits accrued to an employe under this chapter for service rendered shall be due as a contractual right and shall not be abrogated by any subsequent legislative act. The right of the state to amend or repeal, by enactment of statutory changes, all or any part of this chapter at any time, however, is reserved by the state and there shall be no right to further accrual of benefits nor to future exercise of rights for service rendered after the effective date of any amendment or repeal deleting the statutory authorization for the benefits or rights. This section shall not be interpreted as preventing the state from requiring forfeiture of specific rights and benefits as a condition for receiving subsequently enacted rights and benefits of equal or greater value to the participant.

Laws of 1981, ch. 96, § 24.

The *Schmidt* court held that § 42.245(1), STATS., 1965, "entitled [Schmidt] to three years of creditable teaching service." 153 Wis. 2d at 37, 449 N.W.2d at 268-69. The court described Schmidt's rights as "the rights *retained* under the State Teachers Retirement System Fund for the period 1957 to 1963." *Id.*, 449 N.W.2d at 268 (emphasis added).

The teachers point out that § 40.08(10), STATS., was created after they became entitled to teaching service credits under § 42.245(1)(c), STATS., 1965. The fact that

the annual statement of a member's account showed an incorrect "Years of Wisconsin Teaching Service" did not become significant until the participant retired and his or her benefits were computed and benefit payments were made. In fact, according to the *Schmidt* court, "[t]he relevant language of sec. 42.245(1)(a) itself indicates that 'years of teaching service' and 'creditable service' are not necessarily synonymous." 153 Wis. 2d at 44, 449 N.W.2d at 271.

In addition to "service credits granted," § 40.08(10), STATS., creates a limitation on correcting "contribution, premium and benefit payments made under this chapter." The thrust of the statute is to place a limit after which errors in payments out of the fund may not be corrected. The erroneous computation of service credits means nothing until the participant's benefits are calculated and payment is begun. A plan participant does not have a vested right in an erroneously calculated retirement benefit. A participant's status and rights under the participant's retirement system are determined as they exist at the time of his or her retirement. *State ex rel. Smith v. Annuity & Pension Bd.*, 241 Wis. 625, 629, 6 N.W.2d 676, 678 (1942); 78 Op. Att'y Gen. 198, 204 (1989).

The example given by the Department under WIS. ADM. CODE § ETF 11.03(1)(a) where "discovery" dates from the annual statement of account is not a correct construction of § 40.08(10), STATS. We question whether a participant would note that his or her "years of teaching service" changed from the prior year or would attach any significance to that change. This is not the kind of notice which may extinguish vested property interests.

Pension rights are contractual and are protected by Article I, Section 12 of the Wisconsin Constitution

prohibiting the passage of any law impairing the obligation of contracts. *State ex rel. O'Neil v. Blied*, 188 Wis. 442, 446, 206 N.W. 213, 214 (1925); *see* § 40.19(1), STATS. Thus, when the legislature merged the teachers' retirement systems with the Wisconsin Retirement Fund to create the Wisconsin Retirement System, it could not divest plan participants of their right to creditable service vested in them by § 42.245(1)(a), STATS., 1965. The legislature could, however, establish a period of limitation after which a plan participant could not maintain an action against the Department and Board to correct an error in calculating and paying retirement benefits. *See Shaurette v. Capitol Erecting Co.*, 23 Wis. 2d 538, 547, 128 N.W.2d 34, 39 (1964) (statute shortening an existing limitation valid if grace period granted to begin action) (citing *Swanke v. Oneida County*, 265 Wis. 92, 102-04, 60 N.W.2d 756, 761-62 (1953)). The legislature could not, however, enact a period of limitation which would have the effect of extinguishing a participant's claim without fair notice of change in the period of limitation and a fair opportunity to preserve that claim. *See id.* at 544-48, 128 N.W.2d at 37-39. We, therefore, conclude that the "discovery" date under § 40.08(10), STATS., is the date on which the Department calculates and pays retirement benefits to a plan participant.[5]

Having concluded that the Department has a duty to compute the teachers' creditable service, that duty becomes ministerial and may be compelled by mandamus. *Milwaukee County v. Schmidt*, 52 Wis. 2d 58, 71, 187 N.W.2d 777, 783 (1971) ("A procedural, means of suit against state officers is provided by writ of manda-

[5] This includes those teachers who have filed appeals with the Board.

mus."). Therefore, we need not consider defendants' argument that sovereign immunity bars the teachers' prayer for declaratory relief. On remand, the trial court shall direct the Department and the Board to redetermine the teachers' creditable service as required by this opinion.

There remains the issue of interest due those teachers to whom the Department has already granted creditable service under *Schmidt*. The trial court dismissed their claims because they failed to exhaust their appeal remedy under § 40.03(1)(j), STATS. Because the Department and the Board are not committed by rule or policy to dismiss these claims, resort to the teachers' administrative remedies is not futile.

We therefore reverse the trial court's order and remand the cause to the trial court with instructions to direct the Department and the Board to award the teachers teaching service credits pursuant to § 42.245(1), STATS., 1965. However, we affirm the trial court's order insofar as it dismissed the claims for interest of those teachers who have been granted teaching service credits under § 42.245(1).

*By the Court.*—Order affirmed in part; reversed in part and cause remanded with directions.